2007 WY 76

**Russell James MARTIN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 05–263.**

Supreme Court of Wyoming.

May 10, 2007.

Rehearing Denied June 7, 2007.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Diane Courselle, Faculty Director, UW Defender Aid; Vincent P. Schutte and Daniel B. Kelley, Student Interns. Argument by Mr. Kelley.

Representing Appellee: Patrick J. Crank; Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and James Michael Causey, Assistant Attorney General. Argument by Mr. Causey.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] In of June 2005, Appellant, Russell James Martin ("Martin"), was found guilty of attempted second-degree murder in violation of Wyo. Stat. Ann. §§ 6–2–104 [1] and 6–1–301 [2] (LexisNexis 2005). On appeal, Martin

---

1. § 6–2–104. Murder in the second degree; penalty.

Whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree, and shall be imprisoned in the penitentiary for any term not less than twenty (20) years, or during life.

2. § 6–1–301. Attempt; renunciation of criminal intention.

(a) A person is guilty of an attempt to commit a crime if:

(i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substan-

contends that the district court erred in admitting hearsay testimony relating to previous uncharged misconduct and in providing an improper limiting instruction on the suitable use of this evidence. Martin also claims that the district court erred in allowing a mental health expert to invade the province of the jury and testify that the statements Martin voiced shortly after the charged crime established that he intended to kill his wife. We affirm.

## ISSUES

[¶ 2] Martin presents these issues for our review:

I. Whether the district court erred by allowing hearsay accounts of uncharged misconduct evidence, when the victim was available and testified at trial. Were both the form of the evidence and the uses to which the court told the jury the evidence could be put improper.

II. Whether the district court erred in allowing a mental health expert to invade the province of the jury and exceed her expertise by letting her testify to her semantic interpretation that Martin's statements showed he intended to kill his wife.

## FACTS AND PROCEEDINGS

[¶ 3] On the morning of August 22, 2004, Martin was having an unpleasant conversation with his wife, Marla Martin ("Mrs.Martin"). During this discussion, Martin accused Mrs. Martin of, *inter alia*, being a "pathetic mother." Later that morning, as Mrs. Martin stood in the kitchen preparing her young daughter's breakfast, Martin picked up a hammer, approached Mrs. Martin from be-

hind, and struck her multiple times on her head.

[¶ 4] When Martin witnessed Mrs. Martin collapse to the floor, he believed that he had killed her. Martin then went upstairs to his mother's apartment, where he told his mother that he thought he had killed his wife, and called 911. Martin also told the 911 dispatcher that he thought he had killed Mrs. Martin. While he was still on the cellular telephone with the 911 dispatcher, Martin went back to his apartment where he found that his wife was still alive. The dispatcher instructed Martin to wait outside of the apartment for the EMTs to arrive and Martin complied.

[¶ 5] Shortly thereafter, emergency medical care arrived at the Martin residence and Mrs. Martin was taken to the Campbell County Memorial Hospital. There, physicians determined that Mrs. Martin had suffered a severe bilateral skull fracture and required immediate neurosurgery.

[¶ 6] While Mrs. Martin was undergoing medical treatment, law enforcement collected physical evidence from the crime scene and interviewed Martin. During Martin's crime scene interview, which was recorded on audiotape, he stated that he had been awake since the previous night, as he had ingested a small amount of methamphetamine and was hearing voices. Martin also informed law enforcement that these voices did not instruct him to harm Mrs. Martin, instead, Martin claimed that he had "just lost it."

[¶ 7] The State of Wyoming charged Martin with attempted second-degree murder, a felony in violation of §§ 6–2–104 and 6–1–301. Subsequent to the filing of the Information, the circuit court suspended the proceedings against Martin so that the Wyoming State Hospital's Criminal Justice Ser-

tial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime; or

 (ii) He intentionally engages in conduct which would constitute the crime had the attendant circumstances been as the person believes them to be.

 (b) A person is not liable under this section if, under circumstances manifesting a voluntary and complete renunciation of his criminal intention, he avoided the commission of the crime attempted by abandoning his criminal effort. Within the

meaning of this subsection, renunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the person's course of conduct, which increase the probability of detection or apprehension or which make more difficult the accomplishment of the criminal intention. Renunciation is not complete if it is motivated by a decision to postpone the criminal conduct until a more advantageous time or to transfer the criminal effort to another but similar objective or victim.

vice could evaluate him for competency. Dr. Cathy Buckwell, a forensic psychologist for the Hospital, evaluated Martin and determined that he was fit to proceed to trial.

[¶ 8] After the case had been bound over to district court, the State filed its Notice of Intent to Introduce W.R.E. 404(b) evidence of uncharged misconduct, in the form of prior incidents of domestic violence. Defense counsel objected to the introduction of this evidence. Following a 404(b) hearing, the district court concluded that the uncharged misconduct evidence was admissible for the purpose of showing "intent, motive, or absence of mistake or accident."

[¶ 9] The jury trial commenced on June 27, 2005. As part of its case, the State called Mrs. Martin, who testified to multiple incidents of prior domestic abuse by Martin. Particularly, Mrs. Martin testified that Martin had threatened to kill her "a couple times." Mrs. Martin also stated that over the length of their marriage, Martin had pushed her down, hit her, and punched her in the back. Mrs. Martin further testified that approximately one year after their wedding, Martin had gotten on top of her and choked her.

[¶ 10] On cross-examination, defense counsel attempted to prove that the choking incident was not as serious or brutal as Mrs. Martin had portrayed it. For example, defense counsel questioned Mrs. Martin as to why Martin had not killed her, given his larger size and greater strength. In response, Mrs. Martin stated that she was uncertain whether Martin had let her go or whether she had escaped.

[¶ 11] The State then sought to supplement Mrs. Martin's testimony with the W.R.E. 404(b) domestic violence evidence through the testimony of Officers Hloucal and West. Prior to the officers' testimony, the district court gave a limiting instruction and informed the jury that any uncharged acts of domestic violence could only be considered for a limited purpose. Defense counsel did not object to this instruction or propose any alterations.

[¶ 12] Officer Hloucal stated that in July of 1998, he had been called to the Martin residence due to a "family violence incident." When Officer Hloucal began to recount what Mrs. Martin had told him at the scene, defense counsel objected as to hearsay. The State argued that the testimony was admissible as Mrs. Martin's prior consistent statement, and the district court concurred. Therefore, Officer Hloucal went on to testify that Mrs. Martin had told him that she had been choked and hit in the face by Martin.

[¶ 13] Officer West then testified to a 2004 domestic violence episode that had also occurred at the Martin residence. West testified that during her conversations with the Martins, she observed physical injuries to Mrs. Martin's left arm. When the State questioned Officer West about what Mrs. Martin had told her during their conversation, defense counsel again objected as to hearsay. The prosecution responded that he wanted to use the testimony to "establish the time frame in which [Martin's threats to kill Mrs. Martin] occurred and the specific nature of the statement." The district court again overruled the objection and the testimony was admitted. Officer West then testified that Martin "had threatened to slit her throat."

[¶ 14] When the defense presented its case, Martin did not deny that he had struck his wife with the hammer. Martin also admitted to previous incidents of domestic violence, but stated that he loved her and never wanted to kill her. Instead, Martin's defense was premised upon two theories: (1) At the time of the incident, he was suffering from a mental disease or defect that made him unable to appreciate what he was doing; and (2) based upon his methamphetamine-induced psychosis, he had not acted with the specific intent to kill his wife.

[¶ 15] Martin's defense also consisted of the testimony of Dr. Berton Toews and Dr. Robert J. Innes. These doctors both opined that because of Martin's "methamphetamine psychosis," it was likely that Martin had acted impulsively on the morning that he took up the hammer.

[¶ 16] Mrs. Martin was also called to testify for the defense in relation to Martin's attitude and general disposition over the months preceding the incident. During this

direct examination, Mrs. Martin was also asked questions regarding whether she had started any fights with Martin, whether he had threatened to kill her "when he got mad a lot of times," and whether he had ever really tried to kill her.

[¶ 17] The State then called Dr. Cathy Buckwell as a rebuttal witness. She was a forensic psychologist who had previously evaluated Martin's competency to stand trial. Dr. Buckwell testified that Martin did not satisfy the requirements for the defense of not guilty by reason of mental disease or deficiency. Dr. Buckwell also stated, over defense counsel's objection, that based upon her interpretation of the audio taped statements Martin had made after the incident, he had acted with the specific intent to kill Mrs. Martin. The district court later instructed the jury that it could consider expert testimony and the reasons offered therefor, but was not "bound to accept the expert's opinion as conclusive."

[¶ 18] At the conclusion of the trial, Martin was convicted of attempted second-degree murder. In September of 2005, the district court sentenced Martin to a term of imprisonment of 50 years to life.

[¶ 19] These facts will be supplemented when necessary.

## STANDARD OF REVIEW

[¶ 20] Martin claims that the district court erred in allowing hearsay accounts of uncharged misconduct and that Dr. Buckwell's testimony invaded the province of the jury. Decisions regarding the introduction of evidence are entrusted to the sound discretion of the district court. *See Law v. State*, 2004 WY 111, ¶ 14, 98 P.3d 181, 187 (Wyo.2004); *Betzle v. State*, 847 P.2d 1010, 1022 (Wyo.1993) (discussing the admission of expert testimony). The district court's ruling regarding the admission of evidence will not be disturbed absent a finding of a clear abuse of discretion. *Id.* As this Court has previously held, a decision of the district court is entitled to considerable deference and, as long as there exists a legitimate basis for the district court's ruling, it will not be reversed on appeal. *See Williams v. State*,

2002 WY 184, ¶ 5, 60 P.3d 151, 154 (Wyo. 2002). The burden is on the appellant to establish that the district court abused its discretion. *See Trujillo v. State*, 2 P.3d 567, 571 (Wyo.2000). The abuse-of-discretion standard reviews the reasonableness of the district court's holding. *See Kenyon v. State*, 2004 WY 100, ¶ 19, 96 P.3d 1016, 1024 (Wyo. 2004).

[¶ 21] However, if we hold that the district court erred in admitting this evidence, we must then determine whether or not the error affected any of Martin's substantial rights, providing grounds for reversal, or whether the error was harmless. *See Skinner v. State*, 2001 WY 102, ¶ 25, 33 P.3d 758, 766–67 (Wyo.2001); W.R.A.P. 9.04; W.R.Cr.P. 52. The error is harmful if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had never occurred. *Skinner*, ¶ 25, 33 P.3d at 767. To demonstrate harmful error, Martin must prove prejudice under "circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." *Id.* (quoting *Johnson v. State*, 790 P.2d 231, 232 (Wyo.1990)).

[¶ 22] When reviewing questions involving the impropriety of jury instructions, we afford the district court significant deference. *See Bromley v. State*, 2007 WY 20, ¶ 31, 150 P.3d 1202, 1212 (Wyo.2007). The district court is given wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found. Prejudice will be determined to exist only where an appellant demonstrates that the instruction given confused or misled the jury with respect to the proper principles of law. *Id.* Failure to object to an instruction at trial forecloses appellate review of that instruction absent plain error. *See Butcher v. State*, 2005 WY 146, ¶ 29, 123 P.3d 543, 552 (Wyo. 2005). Plain error exists only when: (1) The record is clear concerning the alleged error; (2) a clear and unequivocal rule of law was violated; and (3) the appellant was materially prejudiced by denial of a substantial right. *Id.*

## DISCUSSION

### *W.R.E. 801(d)(1)(B)*

[¶ 23] Martin maintains that his conviction must be reversed due to the significant amount of hearsay testimony given by Officers Hloucal and West. Specifically, Martin claims that Officers Hloucal and West were improperly permitted to recount Mrs. Martin's statements of domestic violence, even though the requirements of W.R.E. 801(d)(1)(B) were not met and the State did not claim that any hearsay exception applied.

[¶ 24] Pursuant to Rule 802 of the Wyoming Rules of Evidence, hearsay is inadmissible "except as provided by these rules or by other rules adopted by the Supreme Court of Wyoming or by statute." *Wilde v. State,* 2003 WY 93, ¶ 11, 74 P.3d 699, 706 (Wyo. 2003); *O'Brien v. State,* 2002 WY 63, ¶ 28, 45 P.3d 225, 234 (Wyo.2002); W.R.E. 802. Hearsay, as defined by W.R.E. 801(c): "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *O'Brien,* ¶ 28, 45 P.3d at 234. Although our evidentiary rules provide for twenty three specific exceptions to the hearsay exclusionary rule, the one exception that we are to be concerned with here is set forth in W.R.E. 801(d)(1)(B): prior consistent statements.[3] W.R.E. 803, 804.

[¶ 25] Although prior consistent statements are inadmissible where the person providing those statements has testified in open court and has been available for cross-examination, W.R.E. 801(d)(1)(B) allows for the use of a prior consistent statement when required for the rehabilitation of a witness whose credibility has been impeached. *See Lancaster v. State,* 2002 WY 45, ¶ 15, 43 P.3d 80, 87 (Wyo.2002); *Dike v. State,* 990 P.2d 1012, 1028 (Wyo.1999).

[¶ 26] Four requirements must be satisfied before a prior consistent statement will be properly admissible: (1) The declarant testifies at trial; (2) the declarant is subject to cross-examination concerning the prior statement; (3) the prior statement is consistent with the declarant's trial testimony; and (4) the prior statement is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. *Lancaster,* ¶ 17, 43 P.3d at 88. We have held that the fourth requirement does not mandate a specific allegation during cross-examination; rather, it may be made by implication or innuendo, and it may be found in the "thrust" of the defenses and testimony presented. *Lancaster,* ¶ 18, 43 P.3d at 89 (citing *Alicea v. State,* 13 P.3d 693, 698–99 (Wyo.2000)).

### a. *Officer Hloucal*

[¶ 27] Upon review of Officer Hloucal's testimony, we find that it was properly admitted pursuant to W.R.E. 801(d)(1)(B). Mrs. Martin testified that at one point during her marriage to Martin, he had choked her. Mrs. Martin was then subjected to cross-examination regarding this incident. During this cross-examination, defense counsel clearly attempted to impeach or discredit Mrs. Martin's allegations. Officer Hloucal then testified that when he was called to the Martin residence, Mrs. Martin stated that she had been choked and hit in the face by Martin, which was consistent with her prior testimony. Although this testimony does not represent the ideal application of W.R.E. 801(d)(1)(B), it will suffice. Accordingly, we hold that the district court did not abuse its discretion in admitting Officer Hloucal's testimony.

### b. *Officer West*

[¶ 28] In regard to Officer West's testimony, we find that her statements were far more grievous. During Mrs. Martin's testimony, she only testified to the choking incident and mentioned that, in general, there had been other death threats and domestic violence incidents in the past. Mrs. Martin never testified to an incident wherein

---

**3.** (d) *Statements which are not hearsay.*—A statement is not hearsay if:

(1) Prior Statement by Witness.-The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]

Martin had threatened to slit her throat. Additionally, in responding to defense counsel's specific objections to West's testimony, the State did not indicate that it was seeking to use the testimony as a "prior consistent statement." Instead, the State provided that West's testimony would be useful "to establish the time frame in which [Martin's threats to kill Mrs. Martin] occurred and the specific nature of the statement."

[¶ 29] Although we find that the prior statements need not be identical word-for-word, W.R.E. 801(d)(1)(B) was not intended to allow testimony to move from the vague to the specific. The Rule does not allow for the use of hearsay evidence to fill in the gaps in the testimony elicited from the initial declarant. Here, Mrs. Martin's testimony that Martin had threatened to kill her was only vaguely consistent with Officer West's testimony that Martin had threatened to slit Mrs. Martin's throat. Accordingly, we find that the district court abused its discretion when it admitted Officer West's testimony.

[¶ 30] While we are gravely concerned with the district court's admission of this hearsay testimony, we find that the error was harmless. *See Kerns v. State*, 920 P.2d 632, 641 (Wyo.1996). Mrs. Martin was called by both parties and subject to extensive cross and direct examination. During Mrs. Martin's testimony, she recounted prior incidents of domestic abuse, threats to her life, and portions of the charged crime itself. This testimony was supplemented by the admissible testimony of Officer Hloucal. Therefore, we find that there is no reasonable probability that the exclusion of Officer West's testimony would have led to Martin's acquittal.

### Limiting Instruction

[¶ 31] Martin's second claim of error concerns the district court's limiting instruction given to the jury prior to Officer Hloucal's and Officer West's testimony. While Martin agrees that a limiting instruction was necessary under the circumstances, he argues that the uncharged domestic violence evidence was admitted for eight purposes, even though the district court had never found the evidence admissible for each of these purposes.

[¶ 32] The challenged Instruction provided:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show he acted in conformity therewith. Such evidence, however, will be admitted and may be heard by you for the following purposes: To show that the defendant acted with intent, to show lack of mistake, to show a course of conduct, a common scheme and a continuing criminal design, to show motive, to place the offenses in their proper setting, to understand the nature of the offenses, and to support the credibility of the victim.

W.R.E. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*And see Dettloff v. State*, 2007 WY 29, 39, 152 P.3d 376, 386–87 (Wyo.2007). As uncharged misconduct carries an inherent danger for prejudice, the district court must instruct the jury, upon counsel's request, that the evidence is to be considered only for the proper purpose for which it was admitted. *See Williams*, ¶ 13, 99 P.3d at 440; *Gleason v. State*, 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo.2002).

[¶ 33] In this case, when the district court ruled that some evidence of uncharged domestic violence would be admissible, the district court determined that a limiting instruction was appropriate. The record also provides that defense counsel failed to object to the instruction that now forms the basis for Martin's claim of error on appeal. Due to the district court's wide latitude in instructing the jury and the fact that the instruction correctly stated the law, we cannot find reversible error.

[¶ 34] Furthermore, the doctrine of invited error prohibits a party from

raising error on appeal that was induced by the party's own actions. *See Bromley,* ¶ 35, 150 P.3d at 1213 (citing *Butcher v. State,* 2005 WY 146, ¶ 29, 123 P.3d 543, 552 (Wyo. 2005)). Martin's defense counsel stated that, after his review of the instruction, he did not have any proposed changes or corrections. Under these circumstances, there will be no grounds for reversal unless the instruction was prejudicial. Martin maintains that he was prejudiced by this instruction because it may have discouraged a "careful analysis by the jury." Although somewhat persuasive, this argument provides only speculation as to how Martin may have been prejudiced, which is insufficient to establish prejudice or reversible error.

***Expert Testimony***

 [¶ 35] Martin's final argument is that the district court improperly allowed Dr. Buckwell to testify in relation to the statements that he made shortly after his attack on Mrs. Martin. Martin maintains that because a critically contested issue at trial was Martin's intent when he struck his wife, Dr. Buckwell's testimony invaded the province of the jury and was beyond her expertise.

[¶ 36] As outlined briefly above, Dr. Buckwell was called as a rebuttal witness for the State. In explaining how she conducted her evaluation of Martin for the Wyoming State Hospital, Dr. Buckwell stated that one consideration that factored into her determination that Martin was not suffering from a mental illness was the audio taped interview between Martin and law enforcement. Dr. Buckwell noted that in that recording, Martin seemed coherent and acted in a manner that was "purposeful and rational." After this colloquy, the State then asked:

Q: Did you identify any significance to the use of words that he had with law enforcement and with dispatch when Mr. Martin specifically said, I killed my wife, or I killed her?

A. Well, you know, semantics is an interesting thing, but if you say, I killed someone, I mean, that does kind of make us think an inference that was an intention.

This was followed by defense counsel's objection. After a brief bench conference, the State, at the district court's instruction, rephrased the question as:

Q. Did you identify any significance in your analysis of his mental state with respect to the phrase that he used in talking to apparently a large number of people after the event where he said either, I killed my wife, I killed Marla, or I killed her?

A. Okay. Yes.

Q. What was that—the significance of that?

A. The significance was it seemed to be a statement that indicated deliberate or purposeful action.

Defense counsel again objected and the district court ordered that the State again rephrase the question.

Q. I believe previous—just before this question you indicated that you believed it was significant in your assessment of his mental illness as to the phrase he used, either I killed Marla, I killed my wife, or I killed her, and I believe you indicated that was significant?

A. Yes.

Q. Okay. And my follow-up question was in what manner did you find that it was significant in rendering your opinion regarding his mental status?

· A. Well, I guess what I can say is that it wasn't—he didn't say, I hurt her, or I accidentally—I mean, it just—the semantics to me indicated that he was telling the police what he did, what he thought he did.

[¶ 37] Martin argues that the problem with this testimony was not that it directly commented on the ultimate issue of the entire case, but that the testimony was not useful to the jury's understanding of the issue at hand. Martin also states that experts are merely called upon to help the jury better understand an issue, not to opine on matters well within the grasp of the average individual. The State claims that Dr. Buckwell's testimony was not offered to prove Martin's intent at the time of the offense, but rather to explain how Buckwell arrived at her opinion regarding his mental status at the time.

[¶ 38] Wyoming juries are extended the responsibility to resolve the factual issues, judge the credibility of witnesses, and ultimately determine whether the accused is guilty or innocent. *See Burton v. State,* 2002 WY 71, ¶ 38, 46 P.3d 309, 319 (Wyo.2002). Testimony by an expert witness concerning a belief that the defendant is guilty of the offense invades the province of the jury and generally mandates reversal of the conviction. *Id.; see also Bennett v. State,* 794 P.2d 879, 881 (Wyo.1990). Yet, we have also held that the trier of fact may give whatever weight and credence it may to the expert testimony as well as all the evidence in reaching a verdict. *See McGinn v. State,* 928 P.2d 1157, 1163 (Wyo.1996).

[¶ 39] In this case, because Martin was charged with attempted second-degree murder, the State was required to prove that Martin struck his wife purposely and maliciously, with the general intent to kill her. Upon an extensive review of the record, we agree with Martin that this testimony was inappropriate and do not find that Dr. Buckwell's testimony was presented to merely establish what facts she relied upon in evaluating Martin's mental status. Although disguised in that manner, it is clear that the State called Dr. Buckwell because it wanted the jury to hear that, in Dr. Buckwell's opinion, Martin's statements "indicated deliberate or purposeful action."

[¶ 40] Although we are troubled by Dr. Buckwell's testimony, any error was harmless. We have confidence that the jury considered all of the expert testimony presented at trial. In Martin's defense, the jury heard testimony from Doctors Toews and Innes, who testified that due to Martin's methamphetamine psychosis, he could not have struck Mrs. Martin with the specific intent of killing her. Furthermore, the jury was also instructed by the district court that it was not required to accept any expert's opinion as conclusive. Therefore, we find no reversible error here.

## CONCLUSION

[¶ 41] While errors were made in the trial of this case, a review of the complete record convinces us that Martin received a fair trial, and the verdict would remain unchanged had the errors not occurred.

VOIGT, C.J., files a dissenting opinion.

VOIGT, Chief Justice, dissenting.

[¶ 42] I respectfully dissent. I would reverse Martin's conviction because there were just too many errors below for us to know that Martin received a fair trial. Briefly stated, my concerns are as follows:

[¶ 43] First, the majority states that Martin presented two defense theories: (1) that he was mentally ill at the time of the offense; and (2) that methamphetamine-induced psychosis prevented him from forming the specific intent to kill. Two problems arise from that duality: Wyoming does not recognize diminished capacity defenses—which is what the second theory must be—and expert witnesses should not be allowed to testify as to the state of mind of the defendant outside the parameters of a mental illness defense. *Keats v. State,* 2005 WY 81, ¶ 22, 115 P.3d 1110, 1119 (Wyo.2005); *Price v. State,* 807 P.2d 909, 915 (Wyo.1991).

[¶ 44] Second, the district court's limiting instruction concerning the uncharged misconduct evidence simply ignored the whole point of *Gleason v. State,* 2002 WY 161, ¶¶ 16–18, 31–32, 57 P.3d 332, 339–40, 343–44 (Wyo. 2002) and its progeny. There is no point in requiring the State to identify and substantiate the relevancy of the uncharged misconduct evidence if one is then going to instruct the jury that the evidence may be considered as proof of everything under the sun.

[¶ 45] Third, Officer West's hearsay testimony was admitted to prove the truth of the matter asserted, that being that Martin specifically intended to kill his wife. It was also uncharged misconduct evidence apparently offered to prove character to prove conduct—he did it once, so he must have done it again. I cannot accept the majority's presumption of no prejudice resulting from this testimony, given that the case revolved solely around the question of intent to kill.

[¶ 46] Fourth, although covered somewhat in the first issue discussed above, I would emphasize again that Dr. Buckwell's

testimony that Martin acted with the specific intent to kill was simply inadmissible. She had a right to testify that he was not suffering from a mental illness or defect at the time of the offense, but she invaded the province of the jury when she opined as to his specific intent.

[¶ 47] Admittedly, many of these problems were self-induced by Martin's counsel, but I think we should expect our criminal jury trials to come closer than this one did in following fundamental rules. We are never going to get adherence to the principles that underlie the admissibility of uncharged misconduct evidence, or hearsay testimony, or expert opinion testimony as to guilt if we don't enforce those principles.