# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 13

OCTOBER TERM, A.D. 2022

February 6, 2023

RYAN LEWIS HILYARD,

**Appellant**
**(Defendant),**

**v.**

S-22-0144

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Natrona County*
*The Honorable Catherine E. Wilking, Judge*

*Representing Appellant:*
    Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Elizabeth B. Lance, Appellate Counsel. Argument by Ms. Lance.

*Representing Appellee:*
    Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General. Argument by Mr. Woykovsky.

*Before FOX, C.J., KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]     Following a jury trial, Ryan Hilyard was convicted of committing aggravated child abuse against his son KH and child abuse against his step-son LT.  On appeal, Mr. Hilyard argues the district court abused its discretion by admitting LT's recorded interview with investigators as a prior consistent statement under Wyoming Rule of Evidence (W.R.E.) 801(d)(1)(B).  Finding no abuse of discretion, we affirm.

## *ISSUE*

[¶2]     We restate the issue:

> Did the district court abuse its discretion by admitting LT's out of court statement as a prior consistent statement under W.R.E. 801(d)(1)(B)?

## *FACTS*

[¶3]     Mr. Hilyard and his first wife had two sons—KH and KB—before divorcing.  He then met Sarah in 2017.  She had one son—LT—from a prior relationship.  Mr. Hilyard and Sarah had a son together, married in 2018, and blended their two families, living in Mills, Wyoming.

[¶4]     On Sunday, August 2, 2020, Mr. Hilyard, Sarah, and the children went to a family reunion at Mr. Hilyard's brother's home in Riverton, Wyoming.  At the reunion, KH, who was 12 years old at the time, upset Sarah and Mr. Hilyard by eating cake.  Accounts vary as to what happened when the family arrived home.  By one account, KH fell on the stairs and hit his head but seemed fine until his health deteriorated several days later.  By another account, both parents made KH run stairs as punishment and physically beat him in the process, resulting in a head injury; they then delayed seeking medical treatment.

[¶5]     On August 6, Sarah brought KH to the Wyoming Medical Center emergency room.  He was unresponsive and had numerous injuries, the most serious of which was a traumatic brain injury (swelling of the brain and bleeding around the brain).   He also had approximately 40 bruises all over his body that were in different stages of healing.  Medical staff contacted police because they suspected child abuse.  KH had to be transported to Colorado for treatment due to the severity of his injuries.  He suffered permanent brain damage.

[¶6]     In separate interviews, Sarah, Mr. Hilyard, LT, and KB all claimed KH fell down the stairs.  The children were taken into protective custody.  LT and KB were placed in the same foster home.

1

[¶7]   In late August, LT told his foster mother that an accident did not cause KH's injuries.  Department of Family Services investigator Tazia Morgart and a detective conducted a recorded interview with LT later that month.

[¶8]   In the recorded interview, LT stated Mr. Hilyard told him and KB to lie to the cops about what happened to KH because Mr. Hilyard did not want to go to jail.  LT and KB lied because they did not want Mr. Hilyard to hurt them.  Mr. Hilyard told them people were going to come over to ask questions and they were supposed to say KH just fell down the stairs and so that is what they said.  LT was afraid Mr. Hilyard would hurt him if he did not lie because Mr. Hilyard picked the children up by their throats a lot and sometimes hit them with a leather belt.

[¶9]   According to LT, KH got in trouble for stealing cake at a family picnic.  Sarah and Mr. Hilyard yelled at KH on the drive home and then made KH exercise as punishment when they got home.

[¶10]  LT recounted that Mr. Hilyard made KH run up and down the stairs and then punched him and dragged him up and down the stairs until KH fell down and hit his head.  At one point, it looked like KH "had no bones[.]"  LT knew what happened because he was standing there.  When questioned about Sarah's location when this occurred, LT explained that she was helping Mr. Hilyard by pushing and dragging KH up and down the stairs.  LT stated "they told [LT]" that if KH stopped running LT needed to push KH down the stairs.  LT was afraid of what would happen if he did not push KH down the stairs, so he pushed KH down the stairs one time.  When KH fell down, Mr. Hilyard and Sarah yelled, punched, and kicked KH.  They told KH "stop faking it, get up."  Mr. Hilyard and Sarah then took KH to his room and LT never saw KH after that.

[¶11]  In November, the State charged Mr. Hilyard with aggravated child abuse under Wyo. Stat. Ann. §§ 6-1-201 and 6-2-503(b)(i), (c), alleging, in part, he did "intentionally or recklessly inflict physical injury . . . upon the victim, to wit: physically beat, kicked and [dragged] [KH], or did aid and abet in the same offense[.]"  It also charged him with child abuse under §§ 6-1-201 and 6-2-503(b)(ii), alleging he did "intentionally or recklessly inflict upon a child, under the age of eighteen (18) mental injury to wit: made [LT] beat his brother [KH] or did aid and abet in the same offense[.]"[1]  Mr. Hilyard pleaded not guilty to the charges.

[¶12]  At trial in November 2021, LT, who was 11 at the time, testified about the circumstances surrounding KH's abuse.  He stated that LT and his family went to a family reunion in Riverton and KH took food out of the trash and ate it.  On the drive home, Mr. Hilyard and Sarah yelled at KH for doing so.  When they got home, LT and the other

---

[1] On the State's motion, the district court dismissed a charge of attempted second degree murder prior to trial.

children went outside to play while KH did pushups, sit-ups, and jumping jacks inside the home as punishment. Later, LT went inside to get a drink and then a few minutes later KH "was told to go run stairs." LT watched from the living room as KH ran stairs. Sarah was at the top of the stairs and Mr. Hilyard was at the bottom of the stairs. If KH stopped at the top of the stairs, Sarah "would shove him down the stairs" and if KH stopped at the bottom of the stairs, Mr. Hilyard "would, like, tell him to keep going or force him to keep going." LT saw his "mom pushing and dragging [KH] down the stairs" and "towards the end, [Mr. Hilyard] and [Sarah] were kicking and punching him."

[¶13]  When asked what LT was doing when this occurred, the following colloquy ensued:

> Q. What were you doing while this was happening?
>
> A. I was at the top, mainly watching. But then, at one point, my mom went to go clean the kitchen or do something in the kitchen; I don't exactly remember what. But she told me to stay at the top of the stairs and if [KH] had stopped at the top of the stairs, she wanted me to push him down. There was one point when he had stopped when I was up there. So I had mainly pushed him down. I'm pretty sure I only pushed him down two, but I didn't really want to get in trouble myself.
>
> Q. And where was [Mr. Hilyard] when that happened?
>
> A. At the bottom of the stairs.
>
> Q. While you were at the top having to push?
>
> A. Uh-huh.

LT stated he pushed KH "[b]ecause I was scared that if I didn't do it, then I was going to get beat myself."

[¶14]  By LT's account, the punishment ended when KH passed out at the bottom of the stairs. When he passed out, Sarah and Mr. Hilyard both told him to "wake up and stop faking it." "[T]hey were kicking and punching him, and then, when they saw he wasn't faking it, then they stopped there." "They dragged him towards his room and they splashed him with water." When KH did not wake up, they told the children to go to the living room. KH remained in the basement after that. KH did not wake up until the next morning and the children had not seen him since.

[¶15]  The prior consistent statement at issue on appeal was admitted through the State's last witness, Ms. Morgart, who testified she was assigned to investigate the abuse

allegations involving KH in August 2020. She further testified that she and a detective conducted a recorded interview with LT in his foster home later that month. The State then moved to admit the first 14 minutes of LT's interview with Ms. Morgart and the detective. Defense counsel objected.

[¶16] The jury found Mr. Hilyard guilty of aggravated child abuse of KH and child abuse of LT. He was convicted of those offenses and sentenced to consecutive prison terms of 18 to 20 years for aggravated child abuse and 5 to 10 years for child abuse. This timely appeal followed.

## *STANDARD OF REVIEW*

[¶17] Because Mr. Hilyard objected, we review the district court's admission of LT's prior statement for an abuse of discretion. *Blair v. State*, 2022 WY 121, ¶ 17, 517 P.3d 597, 601 (Wyo. 2022) (citing *Thompson v. State*, 2021 WY 84, ¶ 15, 491 P.3d 1033, 1039 (Wyo. 2021)). "The district court abused its discretion if 'it could not have reasonably concluded as it did.'" *Id.* (citing *Thompson*, ¶ 15, 491 P.3d at 1039). If the district court abused its discretion by admitting LT's prior statement, we must determine whether this ruling prejudiced Mr. Hilyard. *Id.* (citing *Thompson*, ¶ 15, 491 P.3d at 1039). Mr. Hilyard has the burden to establish abuse of discretion and prejudice. *Id.* (citing *Kincaid v. State*, 2022 WY 4, ¶¶ 31, 32, 501 P.3d 1257, 1263 (Wyo. 2022)).

## *DISCUSSION*

[¶18] "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.R.E. 801(c). "Hearsay statements are generally inadmissible because they are made outside of court and, therefore, presumed to be unreliable." *Blair*, ¶ 18, 517 P.3d at 601 (quoting *Bruce v. State*, 2015 WY 46, ¶ 40, 346 P.3d 909, 923 (Wyo. 2015)); W.R.E. 802. LT's prior recorded interview statement constituted inadmissible hearsay unless it qualified as a prior consistent statement under W.R.E. 801(d)(1)(B). The rule provides:

> (d) *Statements Which Are Not Hearsay.*—A statement is not hearsay if:
>
> (1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]

W.R.E. 801(d)(1)(B).

4

[¶19] We have enumerated four requirements for admission of a prior consistent statement under W.R.E. 801(d)(1)(B).

> (1) the declarant must testify at trial; (2) the declarant must be subject to cross-examination concerning the prior statement; (3) the prior statement must be consistent with the declarant's trial testimony; and (4) the prior statement must be offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

*Thompson*, ¶ 18, 491 P.3d at 1039 (citation omitted). Mr. Hilyard concedes the first requirement was satisfied because LT testified at trial. However, he argues the three remaining requirements were not satisfied. We address each in turn and, for the reasons set forth below, hold the district court reasonably concluded each requirement was met.

### The declarant must be subject to cross-examination concerning the prior statement.

[¶20] Mr. Hilyard acknowledges "L.T. was subject to cross-examination[,]" but asserts LT "was not subject to cross-examination concerning the content of his prior out-of-court statement" because "he had testified much earlier that day and exited the courtroom[,]" and therefore "was not available" when the statement was admitted through Ms. Morgart.

[¶21] We have previously found the "subject to cross-examination" requirement was satisfied where a prior consistent statement was admitted through a witness other than the declarant. *See, e.g., Griggs v. State*, 2016 WY 16, ¶¶ 96, 99, 367 P.3d 1108, 1136 (Wyo. 2016) (prior consistent statements by the child victims were admitted through a forensic interviewer); *Large v. State*, 2008 WY 22, ¶¶ 5, 35, 38, 177 P.3d 807, 810, 818–19 (Wyo. 2008) (prior consistent statements by the child victims were admitted through their foster mother and an investigator). But we have not squarely addressed the parameters of the "subject to cross-examination" requirement under circumstances where, as here, the declarant had testified previous to the witness through whom the prior statement was admitted.

[¶22] "Where our rules are sufficiently similar to federal rules, we consider federal decisions interpreting them persuasive." *Blair*, ¶ 18, 517 P.3d at 601 (quoting *Jontra Holdings Pty Ltd v. Gas Sensing Tech. Corp.*, 2021 WY 17, ¶ 76, 479 P.3d 1222, 1244 (Wyo. 2021)). Though we have distinguished our prior consistent statement rule from the federal rule in one important respect, *see infra* ¶ 34, it is sufficiently similar to its federal counterpart for federal decisions to be persuasive on the "subject to cross-examination" requirement. *Compare* W.R.E. 801(d)(1)(B), *and* F.R.E. 801(d)(1)(B).

[¶23]   Federal courts applying Federal Rule of Evidence 801(d)(1)(B) "typically condone" admission of a prior consistent statement through a later-called witness "so long as there is no bar to recalling the witness-declarant should the opposing party desire to do so."  Wright & Miller, 30B *Fed. Prac. & Proc. Evid.* § 6733 (2022 ed.), Westlaw (Apr. 2022 Update) (footnote omitted).  *See also United States v. Montague*, 958 F.2d 1094, 1099 (D.C. Cir. 1992) (collecting cases).  The Second Circuit Court of Appeals has held:

> [W]here the declarant has already testified and the prior consistent statement is proffered through the testimony of another witness, the Rule's "subject to cross-examination" requirement is satisfied if the opposing party is not denied the opportunity to recall the declarant to the stand for cross-examination concerning the statement.

*United States v. Caracappa*, 614 F.3d 30, 39 (2d Cir. 2010) (citations omitted).

[¶24]   In overruling a case holding otherwise, the Seventh Circuit Court of Appeals explained:

> Cross-examination about the statement can be accomplished whether or not the statement is introduced by the declarant; if the statement is elicited from a third party, the declarant may be recalled for further examination. [*United States v. West*, 670 F.2d 675 (7th Cir. 1982)] thus goes beyond its justification and imposes a precondition for admissibility relating to the order and manner that evidence is presented, a precondition not contained in Rule 801(d)(1)(B).  And although this limitation avoids having to recall the declarant and therefore may serve some benefit in terms of trial management, we think this consideration is better left to the discretion of the trial court.

*United States v. Green*, 258 F.3d 683, 691 (7th Cir. 2001).  Courts have thus found the "subject to cross-examination" requirement satisfied where there was "no indication in the record [] that the defendant made any effort to recall [the witness]," *Montague*, 958 F.2d at 1099, or "was prevented from recalling [the witness] for cross-examination," *Green*, 258 F.3d at 692.

[¶25]   The same reasoning applies here.  W.R.E. 801(d)(1)(B) does not require a prior consistent statement be introduced through the declarant.  Rather, the plain language of the rule simply requires the declarant be "subject to cross-examination concerning the statement[.]"  W.R.E. 801(d)(1)(B).  The record in this case indicates LT was available for re-cross-examination about the recording because, unlike most of the State's witnesses, he was not released from his subpoena after testifying.  Instead, the district court simply

6

instructed LT he could "step off of the witness stand and exit the courtroom at this time." LT was therefore subject to recall but there is no indication in the record Mr. Hilyard made any effort to recall him. Nor could we find any evidence the court prevented Mr. Hilyard from doing so. The district court therefore reasonably concluded the second requirement was satisfied.

### **The prior statement must be consistent with the declarant's trial testimony.**

[¶26] A prior consistent statement may not be used to prove "new points" the declarant's testimony did not cover. *Griggs*, ¶ 100, 367 P.3d at 1136 (citation omitted). That is so because "[m]aterial information presented for the first time to support a prior 'consistent statement' has no antecedent with which to be consistent or inconsistent[.]" *Id.* ¶ 100, 367 P.3d at 1136–37 (citations omitted). However, the declarant's prior statement and trial testimony do not have to be identical. *Id.* ¶ 100, 367 P.3d at 1137 (citations omitted). They need only be "generally consistent[.]" *Id.* (citation omitted).

[¶27] Mr. Hilyard argues LT's "prior statement was not entirely consistent with [his] trial testimony" because, at trial, LT testified his ***mother*** told him to push KH but, in his recorded interview, LT stated ***they*** told him to push KH. He reasons that LT's prior statement "seems to implicate Mr. Hilyard[,]" while LT's testimony "did not implicate Mr. Hilyard in telling him to push K.H."

[¶28] *Martin v. State*, 2007 WY 76, 157 P.3d 923 (Wyo. 2007) is instructive. When Mr. Martin tried to discredit the victim's testimony that he previously choked and threatened to kill her, the State responded by presenting testimony she previously reported to the police that Mr. Martin had (1) choked and hit her in the face, and (2) threatened to slit her throat. *Martin*, ¶¶ 27–28, 157 P.3d at 929–30. We affirmed admission of the first statement but not the second, explaining that "[a]lthough . . . the prior statements need not be identical word-for-word, W.R.E. 801(d)(1)(B) was not intended to allow testimony to move from the vague to the specific." *Id.* ¶ 29, 157 P.3d at 930. Further, "[t]he Rule does not allow for the use of hearsay evidence to fill in the gaps in the testimony elicited from the initial declarant." *Id.*

[¶29] Here, unlike in *Martin*, LT's prior statement that "they" told him to push KH was not more specific than his testimony that his mother told him to push KH down the stairs. Further, this is not a case like *Martin*, where a prior statement was used to fill gaps in testimony. Mr. Hilyard seems to argue otherwise when he asserts he "was not implicated during L.T.'s trial testimony of making him push K.H." because "[i]t was clear that was [done by] L.T.'s mom[.]" The flaw in this argument is that while LT's mother may have initiated his participation, Mr. Hilyard was standing at the bottom of the stairs when she did so and it was Mr. Hilyard who ensured that LT would have to push KH by forcing KH to continue running the stairs even after LT had taken his mother's place.

[¶30]  Further, after having testified to seeing Mr. Hilyard force KH to run by beating him, LT explained that he pushed KH because he "was scared that if I didn't do it, then I was going to get beat myself."  Given this testimony, it would be reasonable to interpret Mr. Hilyard's apparent silence when LT's mother told him to take her place and push KH as an implicit order to LT to do what his mother said.  So understood, the statements are consistent.  *See Sorensen v. State*, 895 P.2d 454, 459 (Wyo. 1995) ("If there is a question as to the consistency of the statements, the proper place to divine the witnesses' meaning is during cross-examination, not on appeal.").

[¶31]  Mr. Hilyard also faults the district court for not "mak[ing] an independent determination as to whether the statement was consistent."  When the State moved to introduce LT's recorded statement, the district court noted it had not been asked to review the recorded statement in advance, so it did not know what it contained.  It therefore asked the prosecutor to address whether the prior statement and LT's testimony were consistent. The prosecutor represented to the court that they were consistent.  Defense counsel did not disagree.  The district court therefore relied on "[t]he uncontroverted . . . representations to the [c]ourt . . . that the prior statement is consistent with [LT's] trial testimony" in admitting LT's recorded statement.  We cannot fault the district court for not independently reviewing the recorded statement under such circumstances.  It reasonably concluded the third requirement was satisfied.

### The prior statement must be offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

[¶32]  Under the fourth requirement, a prior consistent statement is permitted to rehabilitate a witness's credibility after defense counsel has impeached his credibility in the manner described by the rule: "i.e., by an express or implied charge against the witness of recent fabrication or improper influence or motive." *Thompson*, ¶ 19, 491 P.3d at 1039–40 (citation omitted).  The requirement is not satisfied merely because defense counsel takes the position that what the victim claims happened did not occur.  *Id.* ¶ 19, 491 P.3d at 1040 (citation omitted).  However, a fabrication or improper motive charge does not have to occur through a "specific allegation during cross-examination[.]"  *Id.* (citation omitted).  It may occur through "implication or innuendo, and it may be found in the thrust of the defenses and testimony presented."  *Id.* (citation & quotations omitted).

[¶33]  The district court could reasonably conclude the fourth requirement was satisfied. On cross-examination, LT confirmed he "talked to people about this several times" and "the story changed a little bit each time[.]"  Defense counsel also suggested someone may have pressured LT to say something about the abuse.  This prompted the prosecutor to seek clarification on redirect that LT felt pressure within himself to disclose the abuse.  To his recollection, no one else pressured him to say anything.  On cross-examination of LT's foster mother, defense counsel confirmed LT disclosed the abuse to her the same day he had been "acting out."  Defense counsel then asked whether it was "possible" LT told her

about the abuse "to try and get back in your good graces[.]" *Cf. Jones v. State*, 2019 WY 45, ¶ 26, 439 P.3d 753, 762 (Wyo. 2019) ("Questions related to conversations they had with others about what Mr. Jones had done, the photograph shown to A.B., and whether anyone had helped them prepare to testify impliedly charged 'recent fabrication or improper influence or motive.'").

[¶34] Mr. Hilyard seems to argue that if the prior statement was made after the motive to fabricate arose, the court should have excluded the statement. He relies on *Tome v. United States*, 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995), which he cites for the proposition that "prior consistent statements are not admissible under Federal Rule of Evidence 801(d)(1)(B) to rebut an express or implied charge of recent fabrication or improper influence when made *after* the alleged improper motive arose." That may be true, but the federal rule does not apply here, and *Tome* is not the law in Wyoming. As we have explained, "the decision in *Tome* was not based on a constitutional issue and is, therefore, not binding upon this court, which is the final authority on this state's court rules." *Cook v. State*, 7 P.3d 53, 58 (Wyo. 2000). *See also Jones*, ¶ 16, 439 P.3d at 758 ("Although similarly worded, we have consistently held that W.R.E. 801(d)(1)(B) does not require that prior consistent statements be made before the alleged improper motive arose." (citations omitted)). We set out the applicable rule in *Hicks*:

> In Wyoming, [a] prior consistent statement may be used as substantive evidence if the alleged improper influence arose after the statement was made. However, if the prior consistent statement was made after the improper influence arose, then the statement may only be used for rehabilitative purposes. When a prior consistent statement is admissible only for rehabilitative purposes, a limiting instruction must be given, but only if requested.

*Hicks v. State*, 2021 WY 2, ¶ 16, 478 P.3d 652, 658 (Wyo. 2021) (quoting *Griggs*, ¶ 104, 367 P.3d at 1137).

[¶35] Notably, Mr. Hilyard did not request a limiting instruction. The district court therefore did not abuse its discretion by not giving one. *See Hicks*, ¶ 16, 478 P.3d at 658 ("When no request is made to limit the purpose of a post-motive consistent statement, the district court does not err by failing to give such an instruction." (citations omitted)); *Griggs*, ¶ 107, 367 P.3d at 1138 ("Mr. Griggs did not request an instruction limiting the purpose of the evidence to rehabilitation of the victims; thus, the district court did not err by failing to give one." (citation omitted)); *Tombroek v. State*, 2009 WY 126, ¶ 13, 217 P.3d 806, 811 (Wyo. 2009) ("We cannot find an abuse of discretion by the district court, for failing to limit the prior consistent statements to rehabilitation of the victim, where the appellant failed at trial either to identify when an alleged motive to fabricate arose, or to request a limiting instruction."). Because the statement was admitted without a limiting

9

instruction, the jury could use it for any legitimate purpose, including as substantive evidence. *See Neidlinger v. State*, 2021 WY 39, ¶ 31, 482 P.3d 337, 346 (Wyo. 2021) ("If evidence comes in without . . . a request for a limiting instruction, the jury may use it for any legitimate purpose." (citation omitted)); *Tombroek*, ¶ 13, 217 P.3d at 811 (noting, with respect to a prior consistent statement that, "[b]ecause there was no request for a limiting instruction, we must assume that the jury used the evidence for whatever purpose it chose, including substantive evidence of guilt.").[2]

## *CONCLUSION*

[¶36] The district court did not abuse its discretion by admitting LT's out of court statement as a prior consistent statement under W.R.E. 801(d)(1)(B). Affirmed.

---

[2] Mr. Hilyard summarily asserts admission of LT's prior consistent statement resulted in improper bolstering. Improper bolstering occurs when "the State us[es] W.R.E. 801(d)(1)(B) as a tool for impermissible trial tactics by having a victim repeat accusations to authority figures for the direct purpose of using those statements later at trial as prior consistent statements." *Griggs*, ¶ 111, 367 P.3d at 1139 (citation omitted). Mr. Hilyard has not shown the State used any such trial tactics in this case. His bolstering argument therefore fails.