Larry R. RIGHTER, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 87–204.

Supreme Court of Wyoming.

April 1, 1988.

Wyoming Public Defender Program, Leonard D. Munker, State Public Defender, Julie D. Naylor, Appellate Counsel, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Asst. Atty. Gen., Cheyenne, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Chief Justice.

Appellant Larry Righter challenges his conviction and sentence for the first degree sexual assaults of two victims, in violation of § 6–2–302(a)(iv), W.S.1977 (June 1983 Replacement). Appellant raises two issues on appeal:

### I

"Whether or not § 6–2–302(a)(iv), W.S. 1977 is unconstitutionally vague.

### II

"Whether or not there was sufficient evidence to convict the Appellant of the crime of first degree sexual assault."

Affirmed.

On October 4, 1986, Officer Richard Moore of the Sheridan County Sheriff's Office received a report from two men that they had been sexually assaulted. The two are both mildly, mentally retarded men who live at the RENEW work group home in Sheridan. They testified at trial that on October 4, 1986, while on their way into town to pawn Victim No. 1's knife, they met appellant, a stranger to them, on the sidewalk outside appellant's home. Appellant told them that they would not get much money for the knife, offered to buy it himself, and invited the victims into his home. While inside, the three decided to get some liquor and "party" at appellant's house. After having Victim No. 2 change his pants, appellant and the victims walked to a nearby liquor store and bought two cases of beer and some vodka.

They returned to appellant's house, and the victims drank an unknown alcohol containing a worm. Appellant indicated to the victims that, if they ate the worm, it would make them "horny." After drinking the unknown alcohol, the victims drank some beer, and appellant gave Victim No. 2 an unknown pill, which the victim took. Appellant then gave Victim No. 2 some money and sent him to the store to buy some orange juice to add to the vodka. While Victim No. 2 was gone, appellant tried to hug and kiss Victim No. 1, but stopped when Victim No. 1 resisted.

When Victim No. 2 returned with the orange juice, the three drank some vodka mixed with the orange juice. Appellant then took Victim No. 2 into a bedroom and proceeded to perform both anal and oral sex on him, placing his penis into the victim's anus and mouth. Appellant then did the same to Victim No. 1.

The victims testified that there was a bow and arrow on the wall in the bedroom and that appellant had indicated that he would shoot them with it if they tried to sneak or run away. They further testified that the existence of the bow and arrow scared them.

After assaulting the men, appellant passed out. The victims attempted to revive appellant, thinking that something was wrong with him. The victims left appellant's house after reviving him a few times and returned to RENEW in somewhat intoxicated conditions. They later reported the incident to Officer Moore. The victims showed the officer the location of appellant's home, but appellant was not

there. The victims individually were then shown six photographs and were asked if they could identify the man who assaulted them. Each identified appellant.

On November 3, 1986, and December 19, 1986, criminal complaints were filed against appellant for the first degree sexual assaults of the victims, in violation of § 6–2–302(a)(iv). Preliminary hearings were held on the complaints and appellant was bound over to the district court. After arraignments, appellant filed a motion to dismiss the first case on November 21, 1986. This motion was denied at the start of trial. The cases were joined by order of the court with the consent of the parties.

Appellant having waived his right to a jury trial, the case was tried before the court on March 24, 1987. Appellant renewed his motion to dismiss the first case and moved to dismiss the second case at the start of trial on the grounds that the informations were conclusory and failed to set forth with specificity the facts to indicate that appellant knew or should have known that the victims were suffering from developmental problems, and that the informations were so vague and indefinite that they failed to adequately apprise appellant of the charges against him. Appellant attributed the vagueness of the informations to the vagueness of the statute under which he was charged. The motions were denied. At the close of the state's case appellant moved for a judgment of acquittal, which also was denied. Appellant was found guilty of first degree sexual assault as to each victim and was ordered to be examined by the state hospital pursuant to §§ 7–13–601(b) and 7–13–602, W.S.1977. The hospital returned its conclusion that appellant was not mentally ill nor deficient, nor that he was a sexual deviant. After a presentence report was completed, the trial court sentenced appellant to a term of eight to fifteen years on each count, to be served concurrently, with credit for one year of presentence confinement. This appeal followed.

I

Appellant's first contention is that § 6–2–302(a)(iv) is unconstitutionally vague such that it violated his due process rights. Section 6–2–302(a)(iv), provides:

"(a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:

" * * *

"(iv) The actor knows or reasonably should know that the victim through a mental illness, mental deficiency or developmental disability is incapable of appraising the nature of the victim's conduct."

It is well settled that every law is presumed to be constitutional, resolving all reasonable doubt in its favor. *Scadden v. State*, Wyo., 732 P.2d 1036, 1039 (1987); and *Keser v. State*, Wyo., 706 P.2d 263, 266 (1985). In this context, we examine appellant's constitutional challenge.

The constitutional standard for vagueness of a criminal statute violative of due process has been defined by this and other courts. "An ordinance or statute is void for vagueness if it fails to give a person of ordinary sensibility fair notice that the contemplated conduct is forbidden. * * * " *Keser v. State*, supra, at 266. "A statute is unconstitutionally vague when '[M]en of common intelligence must necessarily guess at its meaning and differ as to its application.' * * * " *Jenkins v. Werger*, 564 F.Supp. 806, 808 (D.Wyo., 1983). See also *Shunn v. State*, Wyo., 742 P.2d 775, 777 (1987). "The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954), quoted in *Keser v. State*, supra, at 265–266.

■ Appellant asserts two arguments as the bases of his contention. The first argument embodies a comparison of the above statute with the Model Penal Code's similar statute, and those of other states, which carry lesser penalties for substantially similar offenses as those involved here. The Model Penal Code and the statutes of states cited by appellant charge the same conduct as a third degree offense as opposed to its first degree status in Wyo-

ming. Appellant asserts that while the Model Penal Code and corresponding state statutes are vague, "[T]he model code accepts this vagueness because the punishment is lowered precisely because the vagueness is balanced against the need of society to protect mental deficients. * * *" From this, appellant concludes that because the Wyoming legislature has chosen to penalize one who sexually assaults a victim who is "[I]ncapable of appraising the nature of [his] conduct" more severely than either the Model Code or the other states noted, the statute necessarily is unconstitutionally vague, and therefore violative of appellant's due process rights. § 6–2–302(a)(iv). We do not agree.

This court has approved the proposition that the power to determine which acts are crimes, and the punishment for prohibited acts belongs to the legislative branch as an absolute, exclusive and inherent power not shared with the courts. *Sorenson v. State*, Wyo., 604 P.2d 1031, 1036 (1979). The statute in question expresses a public policy goal of protecting a class of particularly vulnerable citizens from sexual exploitation. Simply because the Wyoming legislature has chosen to more severely punish one engaging in the conduct proscribed by § 6–2–302(a)(iv), than other states, does not in itself render the statute unconstitutionally vague. Wyoming is not alone in so severely punishing the conduct proscribed by this statute. The American Law Institute, Model Penal Code and Commentaries, Part 2, § 213 n. 133, indicates that the other states which authorize the same punishment as that provided for in § 6–2–302(a)(iv) for this offense include Arizona, California, Delaware, Florida, Indiana, Kansas, Louisiana, Maryland, Michigan, Minnesota, Montana, Nebraska, New Hampshire, New Mexico, Pennsylvania, South Carolina, South Dakota, Utah, Vermont and Wisconsin.

■ Moreover, appellant's argument does not address the vagueness issue. The length of the sentence imposed by the statute is irrelevant to the question of whether it is unconstitutionally vague. The real question to be answered in vagueness challenges is whether a person of ordinary sensibility could reasonably understand what conduct is prohibited by the statute.

■ Appellant's second argument supporting his assertion that § 6–2–302(a)(iv) is unconstitutionally vague is that the statute is not capable of even-handed application. As a basis for this contention, appellant relies on evidence elicited at trial that Victim No. 2 had previously had sexual intercourse with a female who was not prosecuted for that act. The latitude thus granted to the prosecutor, appellant argues, renders the statute vague as it permits "[H]arsh and discriminatory enforcement against particular groups or individuals who have incurred the displeasure of local authorities."

The evidence in the record regarding the encounter with the "female" referred to above is too meager to determine whether she would have fallen within the purview of this statute, i.e., that she knew or should have known that the "victim" was incapable of appraising the nature of his conduct. Moreover, because no charges were brought against the "female," it is impossible to know the outcome of the hypothetical case suggested by appellant. As such, it is likewise impossible to determine whether there would have been an even-handed application of the statute yielding " * * * harsh and discriminatory enforcement against particular groups or individuals * * *."

■ This argument likewise fails to address the vagueness issue. The statute is drafted in gender neutral terms. This indicates that *anyone*, male or female, who falls within its purview, by committing a sexual intrusion on a victim who the actor knows or reasonably should know is incapable of appraising the nature of the victim's conduct, will be subject to possible prosecution and punishment under the statute.

■ As previously stated, the question to be answered is whether a person of ordinary sensibility could reasonably understand what conduct is prohibited by the

statute. We believe the statute is clear in what it proscribes.

■ In analyzing a statute, " '[w]ords of common usage should be given their usual, ordinary and natural meaning, or signification, according to approved usage, unless there is some indication to the contrary in the statute itself.' " *Keser v. State*, supra, at 267, (quoting E. Crawford, *The Construction of Statutes*, § 186, at 316–317 (1940)). The language of the statute should not be analyzed in a vacuum. Rather, it should be considered in light of the obvious legislative intent of protecting a class of persons who cannot fully comprehend what they are doing. An ordinary man, asked to read the clear words of § 6–2–302(a)(iv), would see that the statute applies to "[a]ny actor" regardless of whether that actor is male or female, so long as that actor falls within the purview of the statute by either actual or constructive knowledge of the victim's mental deficiencies. What is clearly proscribed is the infliction of sexual intrusion, defined in pertinent part as "[S]exual intercourse, cunnilingus, fellatio, analingus or anal intercourse with or without emission," § 6–2–301(a)(vii)(B), W.S.1977 (June 1983 Replacement), on a victim who is mentally deficient. In essence, an ordinary intelligent person applying common sense to the statute would not have to guess at its meaning to understand that to avoid punishment under the statute, one must refrain from performing a sex act with a person who the actor knows, or should know, is mentally incapable of understanding the nature and possible consequences of sexual activity. No other meaning would be attributed by persons of ordinary sensibility than that which the statute clearly states. Section 6–2–302(a)(iv) is not unconstitutionally vague.

## II

Appellant's second contention is that the evidence was insufficient to sustain his conviction and sentence. The standard for reviewing the sufficiency of the evidence in criminal cases is

"[N]ot whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the [trier of fact] when the evidence is viewed in the light most favorable to the State.
  " * * *

"It is not our function to weigh the evidence for a determination as to whether or not it is sufficient to establish guilt beyond a reasonable doubt. We have consistently held that even though it is possible to draw other inferences from the evidence presented, it is the responsibility of the [trier of fact] to resolve the conflicts in the evidence. * * * " *Broom v. State*, Wyo., 695 P.2d 640, 642 (1985).

See also *Washington v. State*, Wyo., 751 P.2d 384, 387 (1987).

■ As we already have addressed the issue of the statute's vagueness, our only determination is whether there was sufficient evidence concerning the victims' mental and developmental deficiencies to support the trial court's determination that they were incapable of appraising the nature of their conduct and that appellant "[knew] or reasonably should [have known]" of such deficiencies, to be within the purview of the statute.

At trial, several witnesses testified regarding the victims' outward appearances of mental and developmental deficiencies. Illustrative of this testimony is the following colloquy:

"Q. Again, thinking back to when you first remember [Victim # 2] coming in, did you notice anything unusual about [him] or his behavior?

"A. Yeah, he was very loud all of the time, because I remember having to go up and we were pretty busy and having to go up and ask him to leave because he was bothering the girls that were working.

"Q. Did you perceive him to be a normal, every day customer?

"A. No.

"Q. What did you perceive him to be?

"A. Mentally handicapped.

"Q. And how much time had you spent with [the victim] before you concluded that he was probably mentally handicapped?

"A. Not very much, because I did not have a whole lot of dealings with him, because he would always come in looking for the girls. But just in being in the area and listening to him, and so forth, it was pretty evident.

"Q. Let me ask the question this way; was it relatively obvious to you?

"A. Yes."

Also, extensive evidence was introduced regarding the victims' specific deficiencies, including their ability to interact socially and to understand the significance of sexual activity. Both men were determined to be mildly, mentally retarded by professionals in the field of psychology. Their I.Q.'s were 65 and 61 respectively. While both were determined to understand the difference between having sexual intercourse with a woman as opposed to a man, and to some degree the social stigma often associated with homosexual relations, neither victim was considered to be capable of making adult rationalizations or decisions about the activity itself, or to understand the ramifications of adult relationships which include sexual activity. Moreover, the age equivalents of the victims were determined to be eight years and nine months for Victim No. 1 and nine years and one month for Victim No. 2, indicating the level on which they are able to interact and function.

The testimony of the psychologists who examined the victims indicated that neither victim had the ability to give meaningful consent to sexual conduct. Victim No. 1's psychologist testified that the victim could not offer effective resistance to sexual advances or intimidation as he is "[T]oo vulnerable to manipulation and fear" and is "likely to do whatever anyone tells him to do." The psychologist further testified that while Victim No. 1 would be able to repeat society's negative views of those who engage in homosexual activity, if he heard them, he would seriously question the victim's ability to understand those views. When asked whether there were any outward manifestations of this victim's mental and developmental deficiencies, the doctor replied in the affirmative; he stated that it would be apparent even to a young adolescent in talking with this victim for simply a few minutes that the victim was suffering from a mental handicap.

Victim No. 2's psychologist testified that this victim was extremely limited in his ability to look beyond an ordinary situation and to generalize. The psychologist did not believe that this victim could appreciate society's views about homosexuality, nor that he would be able to effectively resist a homosexual act if there was some degree of seduction involved. He further stated that the outward manifestations of this victim's mental disabilities would be noticeable to someone not trained in psychology, specifically this victim's limited vocabulary and his tendency to fill in gaps in conversation with sometimes irrelevant and outrageous statements. Finally, on cross examination, the doctor testified that this victim would be incapable of appraising the nature of his conduct, although having a limited capability to do so.

After hearing all this evidence, the trial court, sitting without a jury, found appellant guilty of first degree sexual assault of the two victims. There was sufficient evidence for the trial court to form a basis to find that appellant committed sexual intrusion on the two victims and that appellant knew or should have known the victims were incapable of appraising the nature of their conduct.

We hold that § 6–2–302(a)(iv), is not unconstitutionally vague, and that there was sufficient evidence to support appellant's conviction and sentence for violation of the statute.

Affirmed.