2008 WY 116

**MARY'S BAKE SHOPPE, and Mary K. Coonts, Individually, and as Owner of Certain Real Property, Appellants (Defendants),**

v.

**CITY OF CHEYENNE, Wyoming, a Municipal Corporation, Appellee (Plaintiff).**

No. S–07–0243.

Supreme Court of Wyoming.

Oct. 6, 2008.

Representing Appellant: Cary R. Alburn III of Cary R. Alburn III, P.C., Ft. Collins, Colorado.

Representing Appellee: Bill G. Hibbler of Bill G. Hibbler, P.C., Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1]  Mary Coonts owned and operated a business known as Mary's Bake Shoppe. She also owned the building housing her business.  In 2004, the building was severely damaged by fire.  The City of Cheyenne determined the fire-damaged building posed a hazard to people's health and safety and notified Coonts that it was condemning the building.  Shortly after Coonts received the first notice of condemnation, the City decided the building's condition had deteriorated to the point where it posed an immediate threat and would have to be demolished on an emergency basis.  Since Coonts had not contacted the City regarding demolition, the City hired its own contractor.  The City held Coonts responsible for the costs of demolition and removal of her building.

[¶ 2]  Coonts failed to pay the costs of demolition, leading the City to file the instant civil action.  The City's action included a claim for repayment of demolition costs and for the foreclosure of its cost-of-demolition lien.  The district court granted summary

judgment to the City on its claims. We affirm.

## ISSUES

[¶ 3] Coonts presents the following three statements as her issues:

**ISSUE I:** It was error for the District Court to grant Summary Judgment to Appellee, because the pleadings, depositions, answers to interrogatories, together with the affidavits, showed that there were genuine issues as to material facts and that Appellee was not entitled to judgment as a matter of law.

**ISSUE II:** It was error for the District Court not to grant Summary Judgment to Appellants, because the pleadings, depositions, answers to interrogatories, together with the affidavits, showed that Appellee could not prevail in a trial on the merits, so that Appellants were entitled to Summary Judgment as a matter of law.

**ISSUE III:** It was error and an abuse of discretion for the District Court not to grant Appellants' *DEFENDANTS' MOTION TO COMPEL DISCOVERY* in full, because by Appellee City's withholding most of the investigative reports sought by Appellants' *MOTION* and the District Court's denial of access to all but a very small portion of those investigative reports, Appellants were denied due process and were unable to effectively defend.

[¶ 4] Issues I and II are too broad to be useful. The language does nothing more than remind us that this appeal is from the grant of a summary judgment against Coonts. The presentation of such broad issues is exactly what Wyoming Rule of Appellate Procedure 7.01(d) is intended to prevent.[1] The Rule exists to provide a direct roadmap to this Court of the coming arguments. In the instant appeal, because there is no appropriate listing of the issues, this Court is put in the highly undesirable position of having to independently scour Coonts' brief in order to determine her specific allegations of error. We will do our best to determine Coonts' points of error, but Coonts bears the risk that we might miss something buried in her brief.[2]

## FACTS

[¶ 5] A structural fire on December 27, 2004, severely damaged two adjoined buildings in the 200 block of West 16th Street in Cheyenne. One building was owned by Mary Coonts and housed her business known as Mary's Bake Shoppe. The other building housed a business known as Wyoming Home. On December 28, at the request of the City's Chief Building Officer (CBO), Bruce Wilson, a structural engineer, Robert Clary, inspected the damaged buildings. Clary concluded both buildings would have to be demolished. He expressly pointed out that the roof and certain walls of Coonts' building were unstable and it was probable they would collapse. Numerous photos, taken December 28, 2004, were attached to his written report.

[¶ 6] On January 6, 2005, Coonts attended a meeting for the fire-affected property owners. The meeting was attended by several city officials, including CBO Wilson and Clary. During the meeting, CBO Wilson confirmed that Coonts' building would have to be demolished.

[¶ 7] Early in January, the owner of the Wyoming Home building hired Spiegelberg Lumber & Building Co. to perform the demolition of her building. On January 20, 2005, Coonts contacted Spiegelberg for a bid for the demolition of her building. On January 21, Clary reinspected the buildings. Clary wrote Speigelberg on January 23, confirming Coonts' building required complete demolition. Clary stated: "The east part of the site, Mary's Bake Shoppe, is totally destroyed by fire and what hasn't collapsed will eventually."

[¶ 8] On January 26, Spiegelberg delivered its bid to Coonts. The amount of the bid was $78,750.00 to $81,575.00. The price did not include the cost of the building per-

---

1. W.R.A.P. 7.01(d) requires an individualized statement of the specific issues presented for this Court's review.

2. We commend to appellate court practitioners Bryan A. Garner, The Deep Issue: A New Approach to Framing Legal Questions, 5 Scribes J. Legal Writing 1–39 (1994–1995).

mit or "concrete slab removal, foundations, footings, shoring or selective demolition that will occur at the sawcutting areas at adjacent buildings." It also did not include ten percent overhead profit to be added to the final bill. Finally, the bid was based on an anticipated ten calendar day schedule. The bid provided for a charge of $130.00 per day for any subsequent days. Coonts immediately e-mailed Spiegelberg and told him she was going to procure a second bid before deciding on whether to accept its bid. On January 28, Coonts met at the building site with a representative from S & S Builders, LLC, to obtain a demolition bid from it. S & S submitted its bid later that afternoon for $114,426.00, for "demolition down to the existing basement floor." Coonts never accepted either bid.

[¶ 9] On January 28, Spiegelberg began demolition work on the Wyoming Home building. CBO Wilson decided that he could no longer wait for Coonts to arrange for the demolition of her building on her own accord. Therefore, he issued a formal Notice and Order of condemnation. The Notice and Order, dated January 28, 2005, gave Coonts two days to obtain necessary permits to demolish and remove the structure and fourteen days to complete demolition. The notice also informed Coonts she had the right to appeal the order to the City Board of Appeals within twenty days. The Notice and Order was hand-delivered to Coonts' attorney the same day, and Coonts was immediately informed of it. CBO Wilson never received any response from Coonts to the Notice and Order.

[¶ 10] On February 3, 2005, CBO Wilson returned to the building site. He had a continuing concern about the unstable walls and roof of Coonts' building. The risk of collapse of these structures had been increased by the freeze and thaw cycle to which the building had been subjected. Given these conditions, and after further inspecting the building, CBO Wilson determined that the building condition had deteriorated to the point where it posed an imminent danger to public safety. He issued an emergency condemnation Notice and Order.

[¶ 11] This new Notice and Order informed Coonts that CBO Wilson had re-inspected the building and determined demolition had to begin immediately because of the building's dangerous condition. Further, because of the emergent situation, the City would arrange for the immediate demolition and removal of the building and the cost therefore "shall be charged against the real estate upon which the structure is located and shall be secured by a lien upon such real estate." The Notice and Order also informed Coonts she had twenty days to appeal.

[¶ 12] The City hired Spiegelberg to do the demolition and removal of Coonts' building. The contract between the City and Spiegelberg was essentially based on the bid Spiegelberg had presented to Coonts. Spiegelberg began work on February 3 and finished on February 28. Clary inspected the building on February 20, at which time he reported demolition and removal was complete except for some site cleanup. CBO Wilson testified that the site was completely demolished and cleaned up as required by the contract. Spiegelberg submitted an itemized bill to the City for $104,817.15, which amount the City paid.

[¶ 13] The City held Coonts responsible for the amount paid to Spiegelberg and filed a notice of lien against her property for that amount. Coonts never paid any of the amount owed, nor did she appeal the emergency Notice and Order to object to the demolition of her building or the amount paid to Spiegelberg. On March 31, 2006, the City filed the instant action for damages and foreclosure of the lien against her property. After extensive discovery, the district court granted summary judgment in favor of the City on both counts.

## DISCUSSION

### Standard of Review

[¶ 14] As we possess the same materials as the district court and are bound by the same legal principles in our review of those materials, our review is de novo. *Hendricks v. Hurley*, 2008 WY 57, ¶ 7, 184 P.3d 680, 682 (Wyo.2008).

*Legal Framework*

[¶ 15] Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." W.R.C.P. 56(c). The facts are reviewed from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Sunshine Custom Paints & Body, Inc. v. South Douglas Highway Water & Sewer Dist.*, 2007 WY 206, ¶ 8, 173 P.3d 398, 401 (Wyo.2007); *Pittard v. Great Lakes Aviation*, 2007 WY 64, ¶ 14, 156 P.3d 964, 969 (Wyo.2007); *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006). If upon review of the record, doubt exists about the presence of issues of material fact, that doubt must be resolved against the party seeking summary judgment. *Linton v. E.C. Cates Agency, Inc.*, 2005 WY 63, ¶ 7, 113 P.3d 26, 28 (Wyo.2005).

[¶ 16] The resolution of issues one and two are in large measure resolved by reference to the building ordinances of the City of Cheyenne. The City of Cheyenne has adopted the 2003 International Property Maintenance Code (IPMC). The IPMC provisions apply

> to all existing residential and nonresidential structures and all existing premises and constitute minimum requirements and standards for premises, structures, equipment and facilities for light, ventilation, space, heating, sanitation, protection from the elements, life safety, safety from fire and other hazards, and for safe and sanitary maintenance; the responsibility of owners, operators and occupants; the occupancy of existing structures and premises, and for administration, enforcement and penalties.

IPMC 101.2.

[¶ 17] The IPMC creates a department of property maintenance inspection, overseen by a "code official." IPMC 103.1. CBO Wilson is the code official for the City. The code official is responsible for conducting property inspections and issuing notices and orders required under the IPMC. IPMC 104.3, 104.6. Pursuant to the IPMC provisions pertinent to the instant appeal, if the code official identifies a building as unsafe, he may order repairs be undertaken or he may order its demolition if

> in the official's judgment [the building] is so old, dilapidated or has become so out of repair as to be dangerous, unsafe, unsanitary or otherwise unfit for human habitation or occupancy, and such that it is unreasonable to repair the structure[.]

IPMC 110.1. If the code official orders demolition, notice shall be served upon the property owner and posted on the property. IPMC 108.3.

> If the owner of [the] premises fails to comply with a demolition order within the time prescribed, the code official shall cause the structure to be demolished and removed, either through an available public agency or by contract or arrangement with private persons, and the cost of such demolition and removal shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate.

IPMC 110.3. Emergency situations are handled differently:

> When, in the opinion of the code official, there is imminent danger of failure or collapse of a building or structure which endangers life, or when any structure or part of a structure has fallen and life is endangered by the occupation of the structure, ... the code official is hereby authorized and empowered to order and require the occupants to vacate the premises forthwith....

> Notwithstanding other provisions of this code, whenever, in the opinion of the code official, there is imminent danger due to an unsafe condition, the code official shall order the necessary work to be done, including the boarding up of openings, to render such structure temporarily safe whether or not the legal procedure herein described has been instituted; and shall cause such other action to be taken as the code official deems necessary to meet such emergency.

\* \* \* \*

Costs incurred in the performance of emergency work shall be paid by the jurisdiction. The legal counsel of the jurisdiction shall institute appropriate action against the owner of the premises where the unsafe structure is or was located for the recovery of such costs.

IPMC 109.1, 109.2, 109.5.

[¶ 18]  Under normal circumstances, the IPMC gives the owner of a building subject to a demolition order the right to institute an administrative appeal within twenty days after service of the demolition order. IPMC 111.1. However, if the demolition order is issued as a result of an emergent situation, an administrative appeal, if requested, is afforded after the demolition of the building. IPMC 109.6.

### Propriety of Summary Judgment in Favor of the City of Cheyenne

[¶ 19]  Coonts' appellate brief lacks a cohesive framework. She throws out points of error seemingly at random. We've decided the best approach is to treat her points as they arise chronologically.

[¶ 20]  The undisputed evidence is that Coonts' building was completely destroyed by the fire of December 27, 2004. There was evidence from both CBO Wilson and Clary supporting this finding. Coonts herself testified that she personally did not know what condition the building was in structurally, nor did she ever seek an independent evaluation. To the extent Coonts argues her building did not need to be razed, her argument is rejected.

[¶ 21]  Coonts was aware, by January 6, 2005, at the latest, of the need to demolish her building when she was informed of the building's condition by CBO Wilson at a property owners meeting. Around the same time, the owner of the Wyoming Home building arranged for the demolition of her building by Spiegelberg. Coonts, however, did not contact Spiegelberg until January 20, 2005. She received Spiegelberg's bid on Jan-

uary 26. She did not accept Speigelberg's bid, but instead sought a second bid from another company. She received the second bid from S & S on January 28. Thus, on January 28, she had two bids in hand, but had accepted neither.

[¶ 22]  CBO Wilson, obviously feeling like he needed to move things along, issued an official condemnation Notice and Order on January 28. Coonts argues there were several deficiencies with this first order. Be that as it may, the first order was superseded by the emergency order and is therefore irrelevant to our discussion.

[¶ 23]  On February 3, 2005, CBO Wilson ordered the emergency demolition of the building and took all appropriate action as required by the IPMC, including sending a new Notice and Order to Coonts. Coonts strongly contends the condition of her building did not warrant emergency demolition. The IPMC leaves the decision solely to the discretion of the code official, in this case CBO Wilson. CBO Wilson testified in his deposition that, between January 28 and February 3, the building condition deteriorated to the point that it had become an imminent danger. Coonts submitted no evidence to the contrary.[3]

[¶ 24]  Coonts takes issue with the process followed in hiring Spiegelberg. She contends the City was required to follow the mandates of Wyo. Stat. Ann. § 15–1–113, "Contracts for Public Improvements." By its very title, it does not apply to the instant situation. Indeed, if further confirmation is needed, Wyo. Stat. Ann. § 15–1–113(a) (LexisNexis 2007) expressly excludes contracts for emergency work from its coverage.

[¶ 25]  The IPMC, which did govern the situation, mandated CBO Wilson take immediate action to eliminate the imminent danger posed by the deteriorating condition of Coonts' building. Spiegelberg was already mobilized on site because of its work on the Wyoming Home building, allowing for immediate response to CBO Wilson's safety concerns. Under the circumstances, CBO

---

3.  Coonts throws out one line to the effect that Speigelberg may have caused the emergency situation by "improvident actions" it took at the direction of the City. She offers no further argument and absolutely no evidentiary support for this allegation.

Wilson's action in hiring Spiegelberg to undertake the demolition and removal of Coonts' building was reasonable.

[6] [¶ 26] Coonts next argues the City should never have paid Spiegelberg's invoice. She alleges Spiegelberg did not properly complete the job. For support, she relies on one photograph taken January 5, 2006, and several other photographs, as well as a video, taken November 23, 2006. Needless to say, this photographic and video evidence is not indicative of the condition of the property on February 28, 2005, when Spiegelberg completed its work at the building site. There is no evidence Spiegelberg performed in anything other than a competent, workmanlike manner. Instead, the specific evidence from both Clary and CBO Wilson is that Spiegelberg completed its work in accordance with the conditions of the contract.

[7] [¶ 27] Coonts also complains the amount charged by Spiegelberg was excessive. Her point of comparison is Spiegelberg's initial bid of $78,750.00 to $81,575.00. Coonts ignores, however, the contingencies contained in the bid. Coonts complains Spiegelberg's invoice was inadequate for a meaningful decision to be made as to the appropriateness of the extra charges. Spiegelberg's invoice, however, lists separate charges for demolition, the building permit, shoring, saw cutting, crane services and ten percent profit. We find nothing untoward in Spiegelberg's billing. The invoice is adequate to sustain Spiegelberg's final charge and justify the City's payment thereof.[4]

■■■ [¶ 28] Coonts' attack moves on to the lien. She claims the City never properly perfected a lien against her property because it did not follow the procedures required to perfect a mechanics lien as set forth in Wyo. Stat. Ann. §§ 29–1–101 through 29–8–109. Title 29, however, defines a "lien claimant" as "any person who claims a lien under this title pursuant to a contract for improvement of property entered into by an owner of property." Wyo. Stat. Ann. § 29–1–201(a)(iv) (Lex-

isNexis 2007). Title 29 therefore does not apply to the instant situation, where it was the City that entered into the contract, not the owner.

[¶ 29] We return, therefore, to the IPMC. The IPMC requires the City to pay emergency demolition costs and creates an automatic lien against Coonts' property for the recovery of such costs—"the cost of such demolition and removal shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate." IPMC 110.3. By the terms of the IPMC, this lien came into existence, and was effective as between the City and Coonts, at the time the City paid Spiegelberg. No filing was necessary to validate the lien as between the city and Coonts. The lien existed by ordinance and was properly judicially foreclosed.

### Discovery

■■■ [¶ 30] Coonts requested the production of all investigative reports in the possession of the City regarding the causation of the fire that destroyed her building, whether originated by city employees or others. The City filed a motion for a protective order on the grounds that the documents related to an on-going criminal investigation and did not contain any relevant information nor could they lead to the discovery of admissible evidence. The district court reviewed the documents in camera, released a few of the records, but granted the protective order as to all other documents.

[¶ 31] The record on appeal contains the sealed documents the district court reviewed in camera. For the sake of brevity, we have simply reviewed these documents. We agree with the district court that none of the protected documents contain relevant information or information that might lead to relevant evidence. Thus, even if there was any error on the part of the district court in protecting these documents from discovery, it is harmless.[5]

---

4. It is especially difficult to believe Spiegelberg's final invoice was excessive when it was almost $10,000 less than S & S's bid.

5. Coonts' appellate argument is presented within the framework of the Wyoming Public Records Act, Wyo. Stat. Ann. §§ 16–4–201 through 205. Her request for production, however, was made

**260**

*Legal Action*

[11, 12] [¶ 32] Finally, Coonts makes two general arguments regarding the underlying action. First, she moved to dismiss the case as to "Mary's Bake Shoppe" at the beginning of the action. Coonts points out that Mary's Bake Shoppe is merely a trade name under which she conducted business. As such, Coonts claims Mary's Bake Shoppe is not a proper party to this action. Coonts is partially correct. Mary's Bake Shoppe is not a corporation or other official legal entity with the capacity to be sued. Under these specific facts, however, the name fairly identifies Mary Coonts and as such, there is no absolute prohibition against its use to identify her as a defendant. *See generally* 67A CJS *Parties*, § 170 (2002); *Brand v. Southern Empl. Serv.*, 247 Ga.App. 638, 545 S.E.2d 67 (2001). In essence, Mary's Bake Shoppe is the alter ego of Coonts. As such it is redundant to sue both Coonts individually and Mary's Bake Shoppe. For the sake of simplicity, the action should have been dismissed as to Mary's Bake Shoppe. The judgment, however, is unaffected. There is one judgment, and it is against Coonts, however referred to.

[¶ 33] Her second objection is that the City did not plead a recognized cause of action for the recovery of money. The first count of the City's complaint was for the recovery of money paid for the demolition and clean-up pursuant to the terms of the IPMC. Coonts argues the IPMC does not create a cause of action. Her argument centers on the language of the IPMC that states: "legal counsel of the jurisdiction shall institute appropriate action against the owner of the premises where the unsafe structure is or was located for recovery of such costs." IPMC 109.5. Coonts argues an "appropriate action" means a recognized action in tort, contract or equity. We disagree. The IPMC created the debt. It also created the authority to recover the debt. The cause of action was properly identified as arising under the IPMC.

in the context of the instant civil litigation, mak-

**CONCLUSION**

[¶ 34] On December 27, 2004, a fire completely destroyed Coonts' building. Over a month later, Coonts had not yet arranged for the demolition and removal of the building. On February 3, 2005, CBO Wilson inspected the building and determined it presented an imminent danger of failure or collapse, endangering life. CBO Wilson followed the proper procedures for an emergency demolition as mandated by the IPMC.

[¶ 35] The City, through CBO Wilson, entered into a contract with Spiegelberg for the immediate demolition and removal of Coonts' building. Spiegelberg appropriately performed all its contractual duties and submitted a sufficiently itemized bill. The City justifiably paid the bill. The lien against Coonts' property was created by the IPMC and was effective as between Coonts and the City once the City paid Spiegelberg.

[¶ 36] There was no harmful error in allowing the City to withhold production of certain investigatory documents as such documents were irrelevant to the case.

[¶ 37] Both counts in the underlying action were properly based on the language and authority of the IPMC. The summary judgment in favor of the City and the foreclosure of the cost-of-demolition lien is affirmed.

ing her arguments inapt.