2009 WY 126

**Frederik Marinus TOMBROEK, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–09–0015.**

Supreme Court of Wyoming.

Oct. 16, 2009.

---

Representing Appellant: Tina N. Kerin, Appellate Counsel; Diane E. Courselle, Faculty Director, and Whitney L. Michak and Janae E. Ruppert, Student Interns, Defender Aid Program. Argument by Ms. Ruppert.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Graham M. Smith, Assistant Attorney General. Argument by Mr. Smith.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶1] Frederik Tombroek (the appellant) was tried and convicted by a jury of first-degree sexual assault for sexually assaulting the victim, an adult woman with a mental disability. The appellant appeals the conviction on the grounds that the district court abused its discretion by allowing witnesses to testify to prior statements made to them by the victim. The appellant also argues that the State failed to present sufficient evidence to prove an element of the crime charged. Finding no abuse of discretion in admitting the prior statements and finding sufficient evidence for the jury reasonably to conclude as it did, we will affirm.

## ISSUES

[¶2] 1. Did the district court abuse its discretion when it allowed the victim's mother, the victim's sister, the examining doctor, and the investigating police officer to testify about the victim's prior consistent statements?

2. Was there sufficient evidence presented to find that the victim was incapable of appraising the nature of her conduct as required by Wyo. Stat. Ann. § 6–2–302(a)(iv) (LexisNexis 2009)?

## FACTS

[¶3] Due to the fact-specific nature of the issues in this case, many of the facts will be discussed more thoroughly as we address the separate issues. For purposes of background and context, however, we will briefly preview the case. In May of 2007, as the victim and her sister had lunch together, the victim's cell phone began to ring and she became visibly upset. In response to the victim's behavior, the victim's sister asked her who was calling. The victim disclosed to her sister that their uncle, the appellant, was calling her and that he had sexually assaulted her in the past. The victim's sister took her to their parent's house where the victim told their mother and father about the sexual assaults. The victim was then taken by her

family to the emergency room for a gynecology exam. At the hospital, the victim and her mother provided statements to Officer Brown (the investigating police officer) about the sexual assaults. Also during the course of the victim's examination, the victim made statements about the sexual assaults to the nurse and the examining doctor. A few days later, the victim was interviewed on video by the Children's Advocacy Project (CAP) about the sexual assaults.

[¶4] The appellant was subsequently arrested and charged with first-degree sexual assault in violation of Wyo. Stat. Ann. § 6–2–302(a)(iv). Specifically, the information alleged that the appellant unlawfully inflicted sexual intrusion on the victim, a mentally deficient adult, by having sexual intercourse with her, knowing that she was incapable of appraising the nature of her sexual conduct. During the jury trial, the victim's mother, the victim's sister, the examining doctor, and the investigating police officer all testified to, among other things, the statements the victim made to them relating to the sexual assaults, including that the victim told them that the appellant was the one who sexually assaulted her. The appellant objected to all of these statements at trial. The appellant was subsequently convicted and sentenced to 14 to 19 years in the state penitentiary. This appeal followed.

## DISCUSSION

### *Did the district court abuse its discretion when it allowed the victim's mother, the victim's sister, the examining doctor, and the investigating police officer to testify about the victim's prior consistent statements?*

[¶5] The appellant argues that the district court abused its discretion in admitting two separate statements by the examining doctor as well as statements by the victim's mother, the victim's sister, and the investigating police officer. We have stated as follows:

The standard for reviewing a trial court's rulings on the admissibility of evidence is well known. Such decisions are within the sound discretion of the trial

court and will not be disturbed absent a clear abuse of discretion. Determining whether the trial court abused its discretion involves the consideration of whether the court could reasonably conclude as it did, and whether it acted in an arbitrary or capricious manner.

A trial court's evidentiary rulings "are entitled to considerable deference," and will not be reversed on appeal so long as "there exists a legitimate basis for the trial court's ruling...." *Robinson v. State*, 11 P.3d 361, 367 (Wyo.2000), *cert. denied*, 532 U.S. 980, 121 S.Ct. 1620, 149 L.Ed.2d 483 (2001). The appellant bears the burden of proving an abuse of discretion. Even where a trial objection has been made to the admission of evidence, error cannot be found unless "a substantial right of the party is affected...." W.R.E. 103(a)(1). These general rules apply to rulings on the admissibility of hearsay evidence.

*Lancaster v. State*, 2002 WY 45, ¶¶ 11–12, 43 P.3d 80, 87 (Wyo.2002) (some internal citations omitted).

[¶ 6] The appellant's first argument is that the district court abused its discretion by admitting two statements from the doctor's testimony. The first statement relates to a comment by the victim to the nurse about who had sexually assaulted her, which statement was then relayed from the nurse to the doctor. At trial, the State asked the doctor to repeat what the nurse had told him about the victim's statement. The appellant objected to admission of the statement as hearsay.[1] The district court allowed the testimony on the ground that the identity of the person who committed the alleged assault was information that a doctor generally relies on in reaching his conclusions. Although the district court did not expressly state that it was relying on the medical exception to the hearsay rule found in W.R.E. 803(4), we assume, as do the parties, that that is what the district court meant by its statement in admitting the evidence. The appellant also claims the district court

abused its discretion when it overruled the appellant's hearsay objection to testimony by the doctor about a statement made directly from the victim to the doctor about who had sexually assaulted her. The district court did not provide any grounds for admitting this statement. Finally, the appellant contends that the district court committed an abuse of discretion when it admitted testimony from the victim's mother, the victim's sister, and the investigating police officer relating to the victim's prior consistent statements pursuant to W.R.E. 801(d)(1)(B).

[¶ 7] The appellant argues that the district court improperly admitted the doctor's statements under W.R.E. 803(4), which governs the admission of hearsay statements made for medical diagnosis and treatment. However, we have repeatedly stated that "[a] district court judgment may be affirmed on any proper legal grounds supported by the record." *Feeney v. State*, 2009 WY 67, ¶ 9, 208 P.3d 50, 53 (Wyo.2009). Accordingly, we do not need to determine whether the doctor's testimony relating to the victim's statements about who she claimed had sexually assaulted her was admissible under W.R.E. 803(4) because it was admissible under W.R.E. 801(d)(1)(B).

[¶ 8] Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.R.E. 801(c). "Hearsay is not admissible except as provided by these rules or by other rules adopted by the Supreme Court of Wyoming or by statute." W.R.E. 802. However, statements classified as prior consistent statements under W.R.E. 801(d)(1)(B) are not hearsay and thus are not subject to the hearsay exclusionary rule. *See Lancaster*, 2002 WY 45, ¶ 13, 43 P.3d at 87; W.R.E. 801(d)(1)(B). W.R.E. 801(d)(1)(B) states:

(d) *Statements which are not hearsay*—A statement is not hearsay if:

(1) Prior Statement by Witness. The declarant testifies at the trial or hearing

---

1. According to the record, the statement in question occurred during a routine preliminary evaluation of the victim done by the nurse, at which time the victim told the nurse that the appellant

had sexually assaulted her. The nurse then relayed that information to the doctor prior to his evaluation of the victim.

and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive....

We have stated that

[f]our requirements must be satisfied before a prior consistent statement will be properly admissible: (1) The declarant testifies at trial; (2) the declarant is subject to cross-examination concerning the prior statement; (3) the prior statement is consistent with the declarant's trial testimony; and (4) the prior statement is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

*Martin v. State*, 2007 WY 76, ¶ 26, 157 P.3d 923, 929 (Wyo.2007) (citing *Lancaster*, 2002 WY 45, ¶ 17, 43 P.3d at 88).

[¶ 9] Applying these requirements to the facts in the case at hand, it is clear that all of the statements were properly admitted as prior consistent statements. The first two requirements are easily satisfied because the declarant victim did in fact testify and was subject to cross-examination. As to the third requirement that the prior statements be consistent with the declarant's testimony, we have stated, "that it is the **consistency**, rather than the substance of the consistent statement, which takes such a statement out of the realm of objectionable hearsay and tends to prove the value of the original statement." *Lancaster*, 2002 WY 45, ¶ 17, 43 P.3d at 88–89 (quoting *Curl v. State*, 898 P.2d 369, 374 (Wyo.1995)) (emphasis in original). The testimony provided by the declarant, that the appellant sexually assaulted her, the way in which the abuse occurred, and the circumstances surrounding the abuse were all consistent with her prior statements to the other witnesses. The victim testified that the appellant would call her on her cell phone, usually when she was at work, and have her come over to the appellant's house when no one else was home, and that the sexual abuse occurred in the kitchen. The witnesses all testified to similar consistent circumstances based on what the victim had told them about the sexual assaults.

[¶ 10] For instance, the victim's mother testified that the victim told her that the appellant called the victim and asked her to come over to the appellant's house, and that she went to the appellant's house where the appellant sexually assaulted her. The victim's sister testified that she was with the victim when the victim became upset after her phone rang, and when the victim's sister asked what was wrong, the victim told her that the appellant had just called her and that the appellant had previously touched her breasts and vaginal area. The examining doctor testified that the victim told him and the nurse that the appellant had sexually assaulted her. Finally, the investigating police officer testified that the victim told him that she had received a phone call from the appellant because he wanted her to come to his house to have sex with him and that she and the appellant previously engaged in sex in his kitchen.

[¶ 11] Finally, the fourth requirement that the prior statements be offered to rebut an express charge of recent fabrication on the part of the declarant is also satisfied. We have stated that "the fourth requirement does not mandate a specific allegation during cross-examination; rather, it may be made by implication or innuendo, and it may be found in the 'thrust' of the defenses and testimony presented." *Martin*, 2007 WY 76, ¶ 26, 157 P.3d at 929 (citing *Lancaster*, 2002 WY 45, ¶ 18, 43 P.3d at 89). The appellant relied on the defense of fabrication throughout the trial; in a pre-trial discussion with the judge and the State's attorney regarding the admissibility of the statements, the appellant's counsel noted that "fabrication is certainly something we will argue." The appellant's defense at trial was largely based on allegations of fabrication and thus the final requirement of the admissibility of prior consistent statements is satisfied. Accordingly, all of the statements were properly admissible as prior consistent statements pursuant to W.R.E. 801(d)(1)(B).

[¶ 12] Inasmuch as the testimony provided by these witnesses was admissible as prior consistent statements, the only question remaining is the purpose for which the testimony could be admitted. Testimony ad-

mitted pursuant to W.R.E. 801(d)(1)(B) can be used as substantive evidence or in certain situations may be limited to rehabilitating the credibility of the declarant who testifies at trial. *Seward v. State*, 2003 WY 116, ¶ 14, 76 P.3d 805, 811 (Wyo.2003). The determination as to whether the testimony is admissible as substantive evidence, or is limited to rehabilitative purposes, focuses on when the alleged fabrication, improper influence or motive to lie occurred in relation to when the consistent statements were made. *Id.* If the consistent statements occurred before the alleged motive to fabricate arose, then the statements are admissible as substantive evidence for the truth of the matter asserted. *Dike v. State*, 990 P.2d 1012, 1024 (Wyo. 1999). However, if the prior consistent statements occurred after the alleged motive to fabricate arose, then they are only admissible to rehabilitate the credibility of the declarant. *Id.* If the testimony is admitted only for the limited purpose of rehabilitating the credibility of the declarant, a limiting instruction must be given to that effect, if requested. *Id.*

[¶ 13] We cannot find an abuse of discretion by the district court, for failing to limit the prior consistent statements to rehabilitation of the victim, where the appellant failed at trial either to identify when an alleged motive to fabricate arose, or to request a limiting instruction. If the appellant had established when the motive to lie arose, he may have been entitled to a limiting instruction to the effect that the prior consistent statements were admissible only for the purposes of rehabilitating the credibility of the declarant and not as substantive evidence of the appellant's guilt. *Dike*, 990 P.2d at 1024. However, the appellant failed to request such an instruction and absent a request, the district court had no duty to provide one. *Id.* Because there was no request for a limiting instruction, we must assume that the jury used the evidence for whatever purpose it chose, including substantive evidence of guilt. Nevertheless, there having been no request that use of the evidence be limited, we cannot find error resulting therefrom. *Alicea v. State*, 13 P.3d 693, 699 (Wyo.2000). Under the particular facts of this case, we are particularly so inclined because the prosecutor carefully limited his own use of the evidence in closing argument to rehabilitation of the victim, thereby lessening any risk of prejudice:

> Throughout [the victim]'s testimony on this, she indicated the same thing over and over and over. She was consistent throughout. She told her sister initially. She then told her parents. She told a doctor and nurse what had taken place. She told law enforcement. She then went in for an interview with the children's advocate. You watched that [interview]. The same consistent statement throughout. And a year later she sat on this stand and told you the exact same situation what [sic] had occurred.

> The defense would have you believe that this is all a big lie. [The victim] made this up. She is telling lies. Her parents were asked questions about does she ever lie, and they were honest. Yes, she does. She is a child. Children lie. We all know that. But they lie to get out of trouble, not to try to get into trouble or cause great trouble, and they don't make elaborate lies. They make lies about did I break something. Did I hit my brother. That is the kind of lies [sic] a child makes, not this.

> You're the one who has to determine the truth in this one, because as the judge has instructed you, you're the ones who are the sole judges of the credibility of the witnesses. You have seen both [the victim] and [appellant] on the stand. You need to make your decision as to who you believe, but you need to do that with common sense.

[¶ 14] The appellant relies on *Seward v. State*, 2003 WY 116, ¶ 16, 76 P.3d 805, 811–12 (Wyo.2003), where we emphasized that, upon a proper objection, district courts

> should consider whether having numerous authority figures trained to recognize sexual abuse appear at trial is actually a trial strategy of preparing a multitude of self-serving, biased, inflammatory, video, audio, and written statements for trial; having the witness testify; and then introducing into evidence these consistent statements made prior to testifying.

Our concern in *Seward* was not so much the repetitious nature of the testimony, as it was the State using W.R.E. 801(d)(1)(B) as a tool for impermissible trial tactics by having a victim repeat accusations to authority figures for the direct purpose of using those statements later at trial as prior consistent statements. *Id.* Specifically, we focused on the direct testimony and videotape interview by a "forensic interviewer" with the victim.[2] *Id.* at ¶ 17, at 812. The appellant in that case urged this Court, notwithstanding precedent to the contrary, to adopt a temporal requirement to the admission of this type of evidence. *Id.* at ¶ 14, at 811. In other words, the appellant asked this Court to prohibit the admission of these types of statements unless they predate a charge of fabrication or motive to lie. *Id.* We expressly refused to revisit whether W.R.E. 801(d)(1)(B) should mirror its federal counterpart, in that F.R.E. 801(d)(1)(B) does not allow consistent statements made after the charge of fabrication to be used for any purpose, including rehabilitative purposes. *Id.* We did, however, acknowledge that W.R.E. 801(d)(1)(B) is susceptible to abuse and we take this opportunity to repeat that concern. *Id.* at ¶ 16 n. 6, at 812 n. 6. In fact, we even cautioned district courts regarding admitting this type of testimony without first considering why the interviews occurred and the probative value of admitting such evidence. *Id.* at ¶ 17, at 812. However, the concerns that we discussed in *Seward* do not exist here. The victim made her statements to the witnesses in a manner that would be expected from a victim in the early stages of a typical sexual assault investigation, rather than in a manner resembling trial preparation tactics, as was our concern in *Seward.*

Accordingly, the prior consistent statements were properly admitted.

[¶ 15] The appellant also relies upon *Wilde v. State,* 2003 WY 93, ¶¶ 11–14, 74 P.3d 699, 706–08 (Wyo.2003), wherein we reversed a conviction under somewhat similar circumstances. A reading of that entire opinion reveals, however, that the focus of our concern was, as in *Seward,* the vouching nature of the questioned testimony, and its resultant prejudice. Furthermore, the nature of discretionary review emphasizes "the question of the reasonableness of the trial court's choice." *Id.* at ¶ 13, at 707. In the instant case, we cannot say that the district court was unreasonable in concluding that the challenged testimony was not unduly prejudicial, and therefore was admissible.[3]

### Was there sufficient evidence presented to find that the victim was incapable of appraising the nature of her conduct as required by Wyo. Stat. Ann. § 6–2–302(a)(iv) (LexisNexis 2009)?

[¶ 16] In determining whether there is sufficient evidence to support a conviction, we apply the following standard of review:

> In reviewing the sufficiency of the evidence ..., we examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial.

2. We noted that the express purpose of the "forensic interview," as admitted by the forensic interviewer herself, was assessing whether the victim's disclosure of events was credible. *Seward,* 2003 WY 116, ¶ 17, 76 P.3d at 812. Furthermore, we stated that it was evident from *Seward* and prior cases that these types of "forensic interviews" were being conducted for the purpose of introduction at trial pursuant to W.R.E. 801(d)(1)(B). *Id.* In light of this, we took the opportunity to caution the district courts against admitting this kind of evidence without first evaluating "how these factors affect the le-

gitimacy of the interviews as prior consistent statements, as well as their probative value." *Id.*

3. It is interesting to note in that regard that the appellant stipulated to admission of the taped CAP interview of the victim. Consequently, neither the district court's, nor our W.R.E. 801(d)(1)(B), analysis includes the admissibility, or effect of admission, of that taped interview, which most closely resembles the type of evidence we found objectionable in *Seward* and *Wilde.*

*Smith v. State,* 2009 WY 2, ¶ 8, 199 P.3d 1052, 1056 (Wyo.2009) (quoting *Martin v. State,* 2007 WY 2, ¶ 32, 149 P.3d 707, 715 (Wyo.2007)) (citations omitted).

[¶ 17] The appellant claims that "[t]he State failed to present evidence from which a jury reasonably could conclude, beyond a reasonable doubt, that [the victim] was 'incapable of appraising the nature of [her] conduct'" with regard to the sexual conduct that occurred, as required by Wyo. Stat. Ann. § 6–2–302(a)(iv). That statute provides, in part:

> (a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:
>
> ....
>
> (iv) The actor knows or reasonably should know that the victim through a mental illness, mental deficiency or developmental disability is incapable of appraising the nature of the victim's conduct.

[¶ 18] We have previously divided subsection (a)(iv) into two parts, requiring (1) that there was sufficient evidence of the victim's mental deficiency or developmental disability to establish that the victim was incapable of appraising the nature of the her conduct; and (2) that there was sufficient evidence showing that the defendant knew or reasonably should have known about the victim's deficiency or disability which makes the victim incapable of appraising the nature of her sexual conduct. *See Saiz v. State,* 2001 WY 76, ¶¶ 17–26, 30 P.3d 21, 26–29 (Wyo.2001); *Righter v. State,* 752 P.2d 416, 420–21 (Wyo. 1988). In *Righter,* we determined that there was sufficient evidence presented at trial to support the jury's determination that the two victims were incapable of appraising the nature of their conduct due to their disabilities. 752 P.2d at 420–21. We noted the numerous witnesses that "testified regarding the victims' outward appearances of mental and developmental deficiencies." *Id.* at 420. We also noted the extensive evidence introduced relating to each of the victims' specific deficiencies, such as their ability to interact socially and their understanding of the significance of sexual activity, especially homosexual activity as was the situation in that case. *Id.* at 421. The victims were both classified as being mildly mentally retarded by psychology professionals and had I.Q.s of 65 and 61 respectively. *Id.* Evidence showed that neither victim was able to understand the ramifications of adult relationships, including sexual activity. *Id.* The victims' age equivalents were eight years and nine months for the first victim and nine years and one month for the second victim, which indicated the level on which each was able to interact and function. *Id.* A psychologist also testified that neither victim was able fully to understand the ramifications of adult relationships and sexual activity and that both victims had outward signs of a disability. *Id.*

[¶ 19] We also addressed the sufficiency of the evidence issue in *Saiz.* In *Saiz,* the defendant admitted knowing that the victim had a developmental disability, namely Down's syndrome, but denied knowing exactly what Down's syndrome was. 2001 WY 76, ¶ 19, 30 P.3d at 27. A witness testified that the victim's outward physical characteristics were consistent with that of a person with Down's syndrome. *Id.* at ¶ 21, at 27–28. We also noted the importance of the jury being able to observe the victim while she testified and assess "her physical appearance, stature, demeanor, and the manner and qualitative level of the victim's speech." *Id.* at ¶ 21, at 28. Several witnesses also testified about the victim's I.Q. and age equivalency. *Id.* at ¶ 22, at 28. The victim's special education teacher testified that the victim had an I.Q. of 52 with a kindergarten to lower first-grade math and reading comprehension levels. *Id.* The victim's pediatrician testified that the victim had an I.Q. of 50 and functioned at an eight-year-old level. *Id.* A clinical psychologist testified that the victim's I.Q. was 57, which placed her in the first percentile for her age.[4] *Id.*

[¶ 20] In the current case, we note the similarities in testimony and evidence that

4. A person in the first percentile for her age means that in a random sample of 100 individuals of the same age, it is predicted that 99 out of the 100 will have a higher I.Q. score than the victim. *Saiz,* 2001 WY 76, ¶ 22 n. 11, 30 P.3d at 28 n. 11.

was presented to that which we accepted as sufficient evidence in *Righter* and *Saiz.* For instance, the special education director testified that the victim had an I.Q. of about 60. That places the victim at a lower I.Q. level than both victims in *Righter* and just above the I.Q. level of the victim in *Saiz.* The school classified the victim as having a mental disability since her I.Q. was under 70. Similar to the classifications of the victims in *Righter* and *Saiz,* the special education director stated that the victim was classified as having "mild-moderate mental retardation," and as being in the "late first-grade level" in reading and "early second-grade level" in mathematics, which are both "below the point first percentile." Furthermore, the special education director stated that "when you look at the testing of speech, language, and overall cognitive [skills it] puts [the victim] at about a 6 to 7–year–old [level]. . . ."

[¶ 21] The special education director discussed the extent of the victim's ability to comprehend high school dating relationships by indicating that the relationship would be very supervised and a boyfriend-girlfriend relationship of someone with a mental disability is not like a relationship with someone the same age without a mental disability. For instance, the special education director noted that a person such as the victim, with a mental disability, may perceive someone as her boyfriend just because he was nice to her or spoke to her. Furthermore, the victim's mother testified that the victim's general abilities have not changed much since the time she was in early grade school. She also testified that the victim's social skills are probably younger than that of a six or seven year old.

[¶ 22] The appellant claims that there was testimony relating to the victim's past sexual experiences and conversations she had about having a baby, as well as other evidence relating to the victim's social interactions, which the appellant claims indicates her ability to appraise the nature of her sexual conduct. Thus, the appellant argues that there was not sufficient evidence for a jury to conclude that the victim was incapable of appraising her actions. However, when we are reviewing a case for sufficiency of evidence, as noted above, we ignore evidence presented by the defendant and view all evidence in the light most favorable to the State and we do not substitute our judgment for that of the jury. *Smith,* 2009 WY 2, ¶ 8, 199 P.3d at 1056 (citing *Martin,* 2007 WY 2, ¶ 32, 149 P.3d at 715). Consequently, we do not consider any evidence indicating that the victim potentially had some awareness of the possible consequences of sexual activity as well as evidence indicating that her social interactions may be greater than her I.Q. indicates.

[¶ 23] The jury heard evidence relating to the victim's I.Q. of 60, that she had been classified as having mild-moderate mental retardation, that her relationships with boyfriends would be much different than that of a high school student without a mental disability, that her cognitive skills put her at about six to seven years of age, and that her social skills were likely similar to a person younger than that. Also of particular importance, as we noted in *Saiz,* is that the jury was able to observe the victim as she testified and evaluate her mannerisms, speech, responses to questions, behavior, and other characteristics and consider those in light of the testimony and other evidence regarding her mental capabilities, and come to a decision about her mental capabilities. Based on the testimony and evidence presented, the jury determined that beyond a reasonable doubt, the victim was incapable of appraising the nature of her conduct. After having viewed the entire record in the light most favorable to the State, we find no significant difference between the evidence presented in this case and that which was presented in *Righter* and *Saiz,* which evidence we found sufficient to support the jury's finding that the victim was incapable of appraising the nature of her conduct.

[¶ 24] Finally, there was sufficient evidence showing that the defendant knew or reasonably should have known about the victim's disability. First, the appellant admitted to knowing about the victim's disability. That fact alone does not suffice, however, because there must be sufficient knowledge of a disability and knowledge that the disability renders the victim incapable of appraising

the nature of her conduct. Wyo. Stat. Ann. § 6–2–302(a)(iv).

[¶ 25] In *Saiz*, the appellant admitted knowing that the victim "was different" and that he knew she "had something," but denied knowing precisely what Down's syndrome was. 2001 WY 76, ¶¶ 19–20, 30 P.3d at 27. We stated that, "knowledge is frequently proved by circumstantial evidence." *Id.* at ¶ 21, at 27. In evaluating whether it was reasonable for the jury to conclude that the appellant knew or should have known of the victim's deficiency or disability, we noted that the appellant previously interacted with people that had Down's syndrome and that witnesses testified that the victim had characteristics similar to that of other people with Down's syndrome. *Id.* at ¶¶ 19–21, at 27–28. We also stated that, "[p]erhaps most importantly, the jury observed the victim testify and was able to assess factors such as her physical appearance, stature, demeanor, and the manner and qualitative level of the victim's speech." *Id.* at ¶ 21, at 28.

[¶ 26] Similarly, in this case, the appellant admitted knowing that the victim had a disability. He said, "I know she has a disability. I feel really bad for the girl." Furthermore, the victim's parents testified about the appellant's familiarity with the victim's disability. According to the victim's mother's testimony, the appellant married into the family when the victim was about a year old. The following colloquy occurred between the prosecutor and the victim's mother:

Q. [By Prosecutor:] Was [the appellant] present at family gatherings and family dinners and things?

A. [By the victim's Mother:] Yeah.

Q. While [the victim] was growing up, was he aware of her situation?

A. I believe everybody in our family is aware of it.

Q. It's not something you can ignore, is it?

A. No, you know if you're around her that she has got a disability.

The victim's father testified similarly in that he was sure that the appellant was aware of the victim's situation. Furthermore, similar to *Saiz*, the victim also testified in this case and the jury was able to observe her mannerisms, speech, and other outward characteristics and was then able to use its experiences and common sense in connection with the other testimony and evidence presented to determine whether someone reasonably should be aware not only of the victim's disability, but of its effect upon her ability to appraise the nature of her conduct. Since the appellant admitted to being aware of the victim's disability, the victim's mother and father testified that the appellant was aware of the victim's disability, and the jury was able to observe the victim's behavior as she testified, it is reasonable to conclude that the jury, having heard this testimony, reasonably could have concluded that the appellant knew, or reasonably should have known, that the victim's disability caused her to be unable to appraise the nature of her conduct.

**CONCLUSION**

[¶ 27] The appellant failed to demonstrate that the district court abused its discretion in admitting the prior consistent statements. Furthermore, we find that there was sufficient evidence presented to the jury for it reasonably to conclude that the victim had a disability which made her incapable of appraising the nature of her conduct and that the appellant was aware of both the disability and its effect upon the victim. Accordingly, we affirm.